HENRY F. TURNER, JAMES F. PURVIS, AND STERLING THOMAS, PLAINTIFFS IN ERROR, *v.* JOSEPH C. YATES.

A bond, with sureties, was executed for the purpose of securing the repayment of certain money advanced for putting up and shipping bacon. William Turner was to have the management of the affair, and Harvy Turner was to be his agent.

After the money was advanced, Harvy made a consignment of meat, and drew upon it. Whether or not this draft was drawn specially against this consignment was a point which was properly decided by the Court from an interpretation of the written papers in the case.

It was also correct to instruct the jury that if they believed, from the evidence, that Harvy was acting in this instance either upon his own account, or as the agent of William, then the special draft drawn upon the consignment was first to be met out of the proceeds of sale, and the sureties upon the bond to be credited only with their proportion of the residue.

The consignor had a right to draw upon the consignment with the consent of the consignee, unless restrained by some contract with the sureties, of which there was no evidence. On the contrary, there was evidence that Harvy was the agent of William, to draw upon this consignment as well as for other purposes.

It was not improper for the court to instruct the jury that they might find Harvy to have been either a principal or an agent of William.

An agreement by the respective counsel to produce upon notice at the trial table any papers which may be in his possession, did not include the invoice of the consignment, because the presumption was, that it had been sent to London, to those to whom the boxes had been sent by their agent in this country.

A correspondence between the plaintiff and Harvy, offered to show that Harvy was acting in this matter as principal, was properly allowed to go to the jury.

The testimony of an attorney was admissible, reciting conversations between himself and the attorney of the other parties in their presence, which declarations of the attorney were binding on the last mentioned parties.

Evidence was admissible to show that a charge of one per cent. upon the advance made upon the consignment, was a proper charge according to the usage and custom of the place.

It is not necessary that the bill of exceptions should be formally drawn and signed, before the trial is at an end. But the exception must be noted then, and must purport on its face so to have been, although signed afterwards *nunc pro tunc*.

THIS case was brought up by writ of error from the Circuit Court of the United States for the District of Maryland.

The facts of the case are set forth in the opinion of the court, to which the reader is referred.

It was argued by *Mr. Barroll* and *Mr. May*, for the plaintiffs in error, and by *Mr. Johnson*, for the defendant in error. There was also a brief filed upon that side by *Mr. S. T. Wallis*.

The points on behalf of the plaintiffs in error were the following:

*First and fifth exceptions.* That the court erred in ruling out the parol testimony offered, of the contents of the invoice sent to the defendant in error by William H. F. Turner from Chatanooga.

*Second, third, and sixth exceptions.* That the court erred in

admitting the testimony to prove the separate contract alleged to have been made by Mr. Yates with H. F. Turner, &c., as set forth in the statement upon page 34 of printed record. Cole *v.* Hebb, 7 G. & J. 20; Davis *v.* Calvert, 5 G. & J. 269; Clark *v.* State, 8 G. & J. 111; Magill *v.* Kauffman, 4 Serg. & Rawle, 317, 321; Franklin Bank *v.* Penn. Del. & Md. S. N. Co., 11 G. & J. 28; Gilpins *v.* Consequa, 1 Peters's C. C. Rep. 87.

*Fourth exception.* That the court erred in admitting the evidence of usage for commission to be charged on advances on shipments made to London, because the said evidence was irrelevant.

*Sixth exception.* That the court erred in admitting the evidence of Mr. Teackle, because it was incompetent testimony, and because it was irrelevant.

*Seventh exception.* That the court erred in rejecting the prayers of the defendants, and in its instructions to the jury, for the following reasons:

1. Because said instructions are vague and uncertain, and therefore calculated to mislead the jury. 2. Because the first instruction is not limited to the interview (or subsequent ones) in which the defendants requested plaintiff's counsel to see Mr. Ward. 3. Because said first instruction embraces the acts and declarations of Mr. Ward, in the interview with Mr. Teackle. 4. Because said first instruction directs the jury that the defendants are bound by the acts and declarations of Mr. Ward, although he was only retained by H. F. Turner as such, unless such limitation of retainer was stated to plaintiff or his counsel. 3 Ph. Ev. 359; 1 Greenl. Ev. § 197, 199. 5. Because the said Purvis and Thomas, two of the defendants, were not bound in law by the acts or declarations of said Ward, if the jury believed the testimony, that said Ward was not their agent or counsel, and did not claim or profess to act as such with their knowledge or consent. (Same authorities.) 6. Because, in order to make the defendants liable for the declarations of said Ward, it ought to have been put to the jury to find that defendants, although present, heard such declarations, or were in a position to be able to hear, if so disposed. Gale *v.* Spooner and others, 11 Vermont Rep. 152; Edwards *v.* Williams, 2 How. Miss. 846; Ward *v.* Hatch, Iredell, 282.

And so far as the second instruction is concerned, that the court erred in giving the same. Because, 1. The said instruction invades the province of the jury, by assuming as facts the making of the draft for $5,733, and also that said draft was drawn as an advance on said bacon. Lewis *v.* Kramer, et al. 3 Md. Rep. 294. 2. The said instruction calls upon the jury

to decide a question of law, in leaving them to find what· are liens on said bacon. Plater *v.* Scott, 6 Gill & Johns. 116. · 3. The said instruction requires the jury to deduct from the net proceeds of sales, the draft for $5,733, without requiring them to find the. fact that said Harry drew said draft, as agent ·of William, and had authority so to do, or the facts from which such authority may be inferred. 4. Because there was no evidence from which the jurors had the right to infer that the draft for $5,733 was in fact drawn by Harry as the agent of William, or that said draft was accepted, or paid by the plaintiff to said Harry, as agent of William, the admission of the payment of said draft being that such payment was to Harry, in his individual capacity, and not as agent. 5. Because the principle announced in said instruction, that if the jury find Harry acted as agent of William in the transactions after occurring in relation to the bacon at Chatanooga, then Harry had authority to draw said draft, and William and his property are bound therefor, is in conflict with the principles of law, there being no evidence in the cause from which an authority to Harry, to draw and negotiate drafts as agent of William, can be sustained. The plaintiffs in error will contend, that the agency of Harry was not otherwise *i*han as overseer and adviser for William, in slaughtering hogs and packing the meats, and did not authorize said agent to procure advances, by pledging the meat before or after its shipment, to Messrs. Gray & Son. And that the character of the agency was known to the defendant in error from · the beginning. And in ascertaining whether Harry had authority to draw the draft in question, the court are bound to exclude from their consideration all the testimony limited to the proof, that Harry acted as principal, and not as agent, in drawing such draft. Sto. Ag. §§ 87, 251, 390. 6. Because the advance of $5,733, under the circumstances of the case, was a fraud upon the sureties in the bonds, if such advance was made upon William's meat. 7. Because the said instruction does not require the jury to find that the advance of $12,000 was made in pursuance of the bond. 8. Because the court erred in allowing the plaintiff below to contend before the jury, upon two distinct, inconsistent propositions. Winchell *v.* Latham, 6 Cowen, 689. Beake's Ex. *v.* Birdsall, 1 Coxe, 14.

### *Additional objections to the Court's second instruction.* .

·1. Because the court erred in its instruction to the jury, that only half the net proceeds of the bacon was to be credited to the defendants. The plaintiffs in error will contend that the whole net proceeds of the bacon should have been credited to the

amount of the advance of $12,000, and the jury instructed to give a verdict for the amount found to be due by William H. F. Turner. They will contend that under the instruction, as given, the jury were bound to find a verdict against the defendants for a greater sum than was owing by William, the excess being to the extent of the other half of the net proceeds not credited.

2. They will also contend that, whether the meat belonged to William or Harry, the $5,733 draft, paid by Mr. Yates, was not a lien on the meat, because the bill of lading was not indorsed. That there can be no lien without an actual or constructive possession of the thing intended to be given in pledge, and that, in the case at bar, Mr. Yates had no such possession. 14 Peters, 445.

3. In the court's instruction the term liens was intended to embrace the item of $5,733, under the fourth exception. The plaintiffs in error will contend that such item was a personal charge against him, to whom the advance was made, and was not a lien on the meat; and the jury should not have been instructed to deduct the same as a lien.

The points on behalf of the defendant in error, were:

1. That the parol evidence referred to in the first exception was properly excluded.

Because notice, at the trial table, to produce the invoice, was insufficient except under the agreement, and the agreement referred only to papers in the actual possession of the parties. The agreement rested obviously on the good faith of the parties and their counsel; and the declaration of the plaintiff below, that the paper was not in his possession, was *prima facie* sufficient to establish that fact, and exclude the paper from the effect of the agreement.

Because, even if the notice had been sufficient to justify parol proof of a paper constructively in the possession of the plaintiff below, the invoice in question was not so constructively in his possession, having been forwarded to accompany meat, destined for the Messrs. Gray, and received by them, and being therefore, by legal presumption, in their possession.

It will be further argued, that the plaintiffs in error were not prejudiced by the exclusion of the parol proof, even if it was admissible under the other proof in that stage of the cause, because it afterwards appeared that the invoice had been actually transmitted to the Messrs. Gray, and was still in their possession, which would have made the parol proof incompetent, even if it had been admitted, under the notice to Yates.

It will further be contended that no prejudice resulted to the plaintiffs in error, in any event, from the rejection of the proof,

because its whole purpose was to show notice to Yates, that the meat on which he advanced $5,733 was William Turner's, not Harry's, and the court rightly instructed the jury, afterwards, that it made no difference, for the purposes of the case, to which of the Turners the meat in fact belonged.

2. That the plaintiffs in error could under no circumstances be entitled to a credit, on the bond in suit, of the proceeds or any part of the proceeds of the shipments to the Messrs. Gray, unless the meat so shipped belonged to William H. F. Turner; that the proof offered by the defendants in error, and the admission of which forms the matter of the second exception, was offered in connection with other direct proof stated in advance, and afterwards adduced, showing that there was a separate contract with Harry F. Turner for the shipment of meats and receiving advances thereon, which separate contract was known to the plaintiffs in error (Henry F. Turner himself being one of them,) when they signed the bond in suit; that the defendants in error, with this knowledge, and forewarned of the difficulties which might result from the two coëxisting contracts, insisted nevertheless on becoming sureties in the mode proven; that by the very terms of the bond they constituted Harry F. Turner (one of themselves) their agent, as to William H. F. Turner's business, and placed him in the position of deceiving or misleading Yates in regard thereto, and of managing and shipping the meat as his own or his son's — which they were forewarned might happen; that they were thus bound by Harry F. Turner's action in the premises; that the correspondence between Harry F. Turner and Yates furnished the only positive evidence of the capacity in which Turner shipped the meat and asked and received Yates's advance thereupon, and such correspondence was therefore clearly admissible, for that purpose, which was the only purpose for which it was offered, and went directly to the question of the right of the plaintiffs in error to be credited on the bond with any part of the shipments to the Messrs. Gray.

That the letters of Turner, and the Messrs. Gladsden, who shipped for him at Charleston, inclosing the bills of lading, and relating to the shipment of the meat, were part of the *res gestæ*, and bore directly on the points for which the proof was offered.

That the accounts of sales of the bacon, rendered by the Messrs. Gray, had been previously spoken of by Robert Turner, the witness of the plaintiffs in error, and were admissible on that ground, as well as part of the *res gestæ*.

That the letters of Harry F. Turner to Yates, about the meat, and in regard to drawing thereupon, had been spoken of

by the same witness, and were admissible, on that score, if on none other.

That the capacity in which Harry F. Turner acted at Chatanooga, had been proven by Wilkins and James S. Turner from said Harry F. Turner's acts, and his letters, accompanying his acts and transactions there, were competent to go to the jury for the same purpose.

3. That the evidence of Mr. Thomas was clearly admissible for the purpose for which it was offered.

4. That the proof in the fourth exception of the custom in Baltimore to charge one per cent. on advances upon shipments to London, and that the plaintiff (below) claimed it, on his advance of $5,733, was admissible, because the advance of $5,733 was properly made, and the plaintiff being entitled to charge for it in account was entitled to the usual commission upon it. The plaintiffs in error themselves, had proven, by the production of Mr. Yates's letter, that such a per centage was chargeable.

5. That the evidence, as to the invoice claimed to be admissible by the fifth exception, was properly rejected, for the reasons previously stated, (No. 1.) and because it was not rebutting evidence, and was inadmissible at that stage of the cause.

6. That the evidence of Mr. Teackle, sought to be excluded by the sixth exception, was not only competent in itself, but was rendered proper by the proof previously introduced by the plaintiffs in error themselves, and embodied in the same exception.

That the letters between the Messrs. Gray and Harry F. Turner, were competent proof, because it had been shown that the plaintiffs in error, when they signed the bond, were notified of the existence of the agreement which these letters constituted, and of which they were the best proof.

That they were likewise admissible, because the plaintiffs themselves had previously produced Mr. Yates's letters, referring to the understanding between Harry F. Turner and the Messrs. Gray, of which the letters here referred to were the only proof.

7. That under the circumstances of this case, and in view of the relation of the plaintiffs in error, Purvis and Thomas, to Harry F. Turner, as their joint obligor and co-defendant, with whom they had taken joint defence, they were bound by his acts and declarations in the premises. Van Reimsdyk *v.* Kane, 1 Gallison, 635; Simonton *v.* Boucher, 2 Wash. C. C. Rep. 473; Martin *v.* Root, 17 Mass. 227; Montgomery *v.* Dillingham, 3 Smedes & Marshall, 647; Armstrong *v.* Farrar, 8 Missouri, 627; 1 Greenleaf's Evidence, § 174; 2 Starkie's Evid. 25; 1 Phillips's Evid. 92.

8. That even if the proof offered and objected to in the second, third, and sixth exceptions was inadmissible, as against Purvis and Thomas, it was clearly competent as against Harry F. Turner, and as the objections were taken, generally, to the admissibility of the proof against all the defendants, they were properly overruled.

9. That the objection to testimony in the third, fourth, and sixth exceptions, was too indefinite to be allowed.    Camden *v.* Doremus, 3 Howard, 530.

10. That if the court erred in reference to the instructions prayed or given, it was in favor of the plaintiffs in error, by rejecting the prayer of the plaintiff below, which was based upon evidence properly before the jury, and tending to the conclusion which the prayer adopted.

That the first prayer of the plaintiffs in error was properly rejected, because it excluded from the jury all consideration of the contract between Yates and Harry F. Turner individually, as well as of the question whether the meat in controversy was or was not his individual property; and because, further, it made the right of the defendants to a credit from the said meat dependent exclusively on the fact of its belonging to William H. F. Turner, without reference to Yates's knowledge or ignorance of that fact, or to the responsibility of William H. F. Turner and his sureties, under the circumstances, for the acts and declarations of Harry F. Turner, whom they had constituted their agent in the transaction.

Said first prayer is further defective, obviously, in that it claims credit to the extent of the whole sale, and receipt of proceeds of the meat, whereas, in no case could the plaintiffs in error have been entitled to a credit of more than one half the said proceeds; the sureties on the other bond being in equal right and entitled to divide whatever credits might appear.

The prayer is likewise improper, because the cause of action being joint, and the defence and issues joint, it nevertheless asks an instruction that the jury may sever in their finding, and give to the defendants, Thomas and Purvis, a credit to which their co-defendant, Turner, is not entitled.

The second prayer of the plaintiffs in error was properly rejected, upon the grounds expressed in the court's first instruction, it being immaterial whose attorney Mr. Ward in fact was, or whether he represented himself to be the attorney of Purvis and Thomas, provided the jury believed, that in their presence and with their knowledge, he acted for them, and that the attorney of Yates was referred by them to him, to settle the differences then pending in regard to the bond.

11. That the rule of court was lawful and governed the case,

and the court properly refused to postpone the swearing of the bailiff and the discharge of the jury until the signing and sealing of the exceptions. Walton v. United States, 9 Wheaton, 651; Ex parte Bradstreet, 4 Peters, 106–7; Brown v. Clarke, 4 Howard, 15.

12. The defendant in error will argue, upon the whole case, that the agreement of William H. F. Turner to send his shipments to Gray & Son, to pay off the advance of $12,000, and whatever else he might be allowed to draw for, was no part of the bond or of the consideration upon which the plaintiffs in error joined in it; but a stipulation made afterwards to Yates, not by him, for his benefit, nor that of Turner and his sureties; that it in no way precluded Yates from making subsequent advances, or pledged him to appropriate the proceeds of the meat first to the $12,000 loan; but, on the contrary, expressly provided for further advances and their payment; that whether Harry F. Turner signed himself "agent" or not to the $5,733 draft, made no difference whatever, provided Yates accepted and paid the same in good faith, on a pledge of the meat; that whatever be the shape of the transactions, it is manifest that the original loan was to have been made to Harry F. Turner, on the terms of his letters to Messrs. Gray; that bonds to that effect were drawn with the knowledge of Purvis and Thomas; that the substitution of William H. F. Turner was only as to the loan of $12,000, and was made for the benefit of Harry F. Turner, without the participation of William, who was in Chatanooga, and at the request of the sureties, against the remonstrance of Yates's attorney, that Harry F. Turner was agent of William and manager of the whole business, its property and correspondence, with the privity and at the desire of the sureties; if he committed a fraud on Yates, or on them, they must bear the burden, as he was of their selection; and that they are under no circumstances entitled to have carried to the credit of the bond more than the amount given by the jury; that is to say, the margin left of the proceeds of the shipments, after allowing for the usual stipulated advances.

Mr. Justice CURTIS delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Maryland. The action was debt on the bond of the plaintiffs in error, the condition of which was as follows:

Whereas the said Joseph C. Yates is about to lend and advance to William H. F. Turner the sum of twelve thousand dollars, in such sums and at such times as the said William may designate and appoint; which designation, and appoint-

ment, and advances it is hereby agreed shall be evidenced by notes drawn by the said William in favor of the said Harry 'F.. Turner, agent, and by the latter indorsed, or by drafts drawn by the said William H. F. Turner in favor of the said Harry F. Turner, agent, on, and accepted or paid by the said Yates, indorsed by said Harry F.

And whereas the said Harry F. Turner, Sterling Thomas, and James F. Purvis, have agreed, as the consideration for the said loan, to secure the said Yates the payment of the sum of six thousand dollars, and interest thereon, part of the said loan; and the said Harry F. Turner, with Robert Turner and Absalom Hancock, have entered into a bond similar to this, for the payment of the other six thousand dollars and interest.

Now the condition of the above obligation is such, that if the said William H. F. Turner, at the expiration of twelve months from the date hereof, shall well and truly pay to the said Joseph G. Yates, his executors, administrators, or assigns, all such sum or sums of money as may be owing to the said Yates, by the said William H. F. Turner, evidenced as aforesaid, at the said expiration of the said twelve months; or in case the said William H. F. Turner should fail or omit to pay said sum or sums of money, at said time, if the said Sterling Thomas and James F. Purvis, or either of them, shall well and truly pay to the said Yates, his executors, administrators or assigns, so much of said sum or sums of money as may then be owing, as shall amount to six thousand dollars and interest, in case so much be owing, with full legal interest thereon, or such sum or sums of money as may be owing with interest thereon, in case the same should amount to less than six thousand dollars, then this obligation to be null and void, otherwise to remain in full force and virtue in law.          HARRY F. TURNER,  [SEAL.]
                                         STERLING THOMAS,  [SEAL.]
                                         JAMES F. PURVIS.  [SEAL]

The defence was that, seven hundred boxes of bacon had been consigned by William Turner to Gray & Co., in London for sale; and having been sold, the whole of its proceeds ought to be credited against the advance of twelve thousand dollars mentioned in the condition of the bond. The plaintiff did not deny that the merchandise was received by Gray & Co. for sale, and sold by them, but insisted that the property belonged to Harry, and not to William Turner, and so no part of its proceeds were thus to be credited; and that, if bound to credit any part of these proceeds, there was first to be deducted the amount of a draft for $5,733, drawn by Harry Turner on the plaintiff specifically against this property, which draft the plaintiff was admitted to have accepted and paid.

Upon this part of the case, the district judge who presided at the trial ruled:

" If the jury believe that defendants executed and delivered the bond now sued upon, and that Harry F. Turner, in the transactions, after occurring, in relation to the bacon at Chattanooga, was either the principal in such transactions, or acted as agent of William H. F. Turner, then defendants are entitled only to be credited for one half the net amount of the shipments of bacon made by them, after deducting from the proceeds of sales of such bacon all liens thereon, including in such liens the draft of $5,733 drawn as an advance on such bacon."

This ruling having been excepted to, several objections to its correctness have been urged at the bar by the counsel of the plaintiffs in error.

The first is, that the bond does not show the advances were actually made, and, therefore, the judge ought to have directed the jury to inquire concerning that fact. It is a sufficient answer to this objection to state what the record shows, that, in the course of the trial, the plaintiff, having put in evidence drafts corresponding with those mentioned in the bond, amounting to $12,000, the defendants admitted their genuineness, and that they were all paid at the times noted thereon. The fact that the $12,000 was advanced was not therefore in issue between the parties, and there was no error in not directing the jury to inquire concerning it.

It is further objected that in his instruction to the jury the judge assumed that the draft of $5,733 was drawn against this consignment, instead of leaving the jury to find whether it was so drawn. The draft itself and the letter of advice were in the case. The draft requested the drawee to " charge the same to account as advised." The letter of advice states: " I have this day drawn on you at ninety days for $5,733, being ten dollars and fifty cents per box on 544 boxes singed bacon, &c." This was a part of the merchandise in controversy. It was clearly within the province of the court to interpret these written papers, and inform the jury whether they showed a drawing against this property. When a contract is to be gathered from a commercial correspondence which refers to material extraneous facts, or only shows part of a course of dealing between the parties, it is sometimes necessary to leave the meaning and effect of the letters, in connection with the other evidence, to the jury. Brown *v.* McGran, 14 Pet. R. 493.

But this was not such a case; and we think the judges rightly informed the jury that this draft was drawn against this property. Whether, being so drawn, it bound the property and its proceeds, so that in this action its amount was to be deducted

therefrom, depended upon other considerations, which are exhibited in the other part of the instruction. Assuming, what we shall presently consider, that there was evidence from which the jury might find that Harry, who drew the draft, was either himself the owner of the property, and so the principal, or if not, that he was the agent of William, there can be no doubt of the correctness of this instruction, unless there was something in the case to show that the owner of the consignment could not bind its subject by a draft made and accepted on the faith of it. This is not to be presumed; and if the two defendants, who were sureties on this bond, assert that they had a right to have the whole of the proceeds of this property appropriated to the repayment of the advance of $12,000, for which they were in part liable, it was incumbent on them to prove that the ordinary power of a consignor, by himself or his agent, to draw against his property, with the consignee's consent, was effectually restrained by some contract with the sureties, or of which they could avail themselves. We have carefully examined the evidence on the record, and are unable to discover any which would have warranted the jury in finding such a contract.

The bond itself contains no intimation of it. And although the evidence tends to prove that the sureties had reason to expect that bacon would be packed and sent to Gray & Co., and that, through such consignments, the advance of $12,000 might be partly or wholly repaid, they do not appear to have stipulated or understood that William was to have no advance on such property. Indeed, the real nature of the transaction seems to have been that the bond was taken to cover an ultimate possible deficit, after the property should have been sold and all liens satisfied; leaving William their principal, free to create such liens as he might find expedient in the course of the business.

We are also of opinion that there was evidence in the case, from which the jury might find that Harry was held out to the plaintiff, by William, as his agent, as well for the purpose of drawing against this property as for other purposes. The letter from William Turner to the plaintiff of the 14th November, 1849, and the agreement of Harry appended to it, tend strongly to prove this. They are as follows:

"CHATTANOOGA, Tenn., *Nov.* 14, 1849.

"MR. JOS. C. YATES:

"DEAR SIR: In consideration of the advance of twelve thousand dollars made me by you for the purpose of packing meats for the English market, I hereby bind myself to make my whole shipments, of whatever kind they may be, to your friends in

London or Liverpool, Messrs. B. Charles T. Gray & Son, for the entire season, or longer, till such advance shall have been paid off, together with any other that I may be permitted to draw for.

"I am, dear sir, your most obedient servant,

"W. H. F. TURNER.

"I agree to see the above carried out in good faith, and bind myself for the due fulfilment of it.

"HARRY F. TURNER, *Agent of*

"W. H. F. TURNER."

It thus appears that further advances to William were contemplated as a part of the arrangement with him, and Harry, as agent of William, was to see the whole arrangement carried out upon his personal responsibility. If, as these witnesses show, Harry was agent for William for carrying out the whole arrangement, and further drawing was contemplated as a part of it, it necessarily follows he was his agent thus to draw. It is shown by the correspondence that Harry had the sole charge of getting the property down to the sea-board from the interior, and of shipping it; and that he had incurred large debts on account of it; and, finally, William Turner has not, so far as appears, repudiated his act in drawing, and the defendants now claim the benefit of a consignment, on the faith of which the draft in question was accepted.

Under these circumstances our opinion is that it was not improper for the judge to leave it to the jury to find whether Harry was the agent of William, if he were not himself the owner of the property. Nor do we think these two states of fact present such inconsistent grounds as ought not to have been submitted to the jury. It is true Harry could not be at the same time principal and agent; but it often happens in courts of justice that a right may be presented in an alternate form or upon different grounds.

If one party has dealt with another as an agent, it would be strange if the transaction should be held invalid because it is proved on the trial he was principal — and *è converso.* The substantial question, in such a case, is a question of power to do an act; and this power may be shown, either by proving he had it in his own right or derived it from another. Of course there may be cases where the allegations of the parties on the record restrict them to one line of proof; and there may be others in which the court, to guard against surprise, should not allow a party to open one line of proof, and in the course of the trial abandon it and take an inconsistent one. But this last is a matter of practice, subject to the sound discretion of the court, and not capable of revision here upon a writ of error.

We hold the second instruction, which involved the merits of the case, to be correct.

The other bills of exception relate chiefly to questions of evidence.

In the course of the trial the defendants introduced a witness, who testified that he made out an invoice of the 700 boxes of bacon, and sent it by mail to the plaintiff, who was the agent of Gray & Co., to whom the property was consigned in London.

The defendants then called on the plaintiff to produce this invoice under the following agreement:

"It is agreed between the plaintiff and defendant in this cause, that either party shall produce, upon notice at the trial table, any papers which may be in his possession, subject to all proper legal exceptions as to their admissibility or effect as evidence; and that handwriting, where genuine, shall be admitted without proof. "S. T. WALLIS, *for plaintiff*,
"BENJ. C. BARROLL, *for defendants.*"

The plaintiff said the invoice was not in his possession. The defendants then offered to prove its contents. But the court was of opinion it was to be presumed the invoice had gone to the consignees in London, who were competent witnesses to produce the original; and therefore parol evidence of the contents of the paper was excluded.

This ruling was correct. So far as appears, this was the only invoice made. Every consignment of merchandise, regularly made, requires an invoice. It is the universal usage of the commercial world to send one to the consignee. The revenue laws of our own country, and we believe of all countries, assume the existence of such a document in the hands of the consignee on the arrival of the merchandise. It was the clear duty of the plaintiff, when he received the invoice, to send it to the consignees in London. The presumption was that he had done what is usually done in such cases, and what his duty required. If the paper was in the hands of the consignees in London, secondary evidence was not admissible. For it was not within the written agreement to produce papers, which applied only to those in the possession of the plaintiff; and though the plaintiff was an agent of those consignees, and seems to have been suing for their benefit, yet aside from the written agreement they must be treated either as parties or third persons. If as parties, they were entitled to notice to produce the paper; if as third persons, their depositions should have been taken, or some proper attempt made to obtain it. This also disposes of the fifth exception; because, if the evidence in the cause had some tendency to prove the document had been retained, the offer of the plaintiff to prove the contrary, and the election by

the defendants to rest their motion for the admission of the parol evidence upon a concession that the fact was as the plaintiff offered to prove it, instead of first calling for that proof, must preclude them now from objecting that the proof was not given.

The second exception relates to the admission of certain correspondence respecting this property between the plaintiff and Harry Turner and Messrs. Gadsden & Co., of Charleston, S. C., before the property was shipped to London, and also the accounts of sales of the property, which were introduced by the plaintiffs for the purpose of showing that they were dealing with Harry Turner as principal, and under a separate contract with him. We have no doubt of the admissibility of this evidence for the purpose for which it was offered. Whether Harry was principal or agent, it was competent and important for the plaintiff to prove that he was dealt with and treated as a principal ; and there could be no better evidence of it than the correspondence concerning the transaction. On the trial of a commercial cause such a correspondence is not only generally admissible, but it is often the highest evidence of the nature of the acts of the parties and the capacities in which they acted and the relations they sustained to each other. It must be observed that the plaintiff, in one aspect of his case, had three things to prove. First, that there was a distinct arrangement with Harry to ship property to Gray & Son and receive advances on it. Second, that the plaintiff and Gray & Son acted on the belief that this consignment was made under that arrangement. Third, that in point of fact this consignment was made by Harry on his own account, and not on account of William. And evidence showing that Harry, being in possession of the property, consigned it to them, accompanying or preceded by such letters as showed the consignment to be for his own account, was clearly admissible upon each of these points. It is true it might, nevertheless, be the property of William, and really sent for his account, but that was a question for the jury upon the whole evidence.

The third exception relates to the admission of the testimony of Mr. Thomas respecting certain declarations made to him by Mr. Ward. We do not deem it necessary to detail the evidence, it being sufficient to say, that so far as these declarations were made in the presence of all the defendants, they were of such a character, and made under such circumstances, as imperatively to have required them to deny their correctness if they were untrue; and therefore they were clearly admissible. So far as Mr. Ward's declarations were made to Mr. Teackle, when the defendants were not present, they are stated to have been merely a repetition of his former statements.

The judge left them to the jury, with the following instruction:

"If the jury find that W. J. Ward, Esq., was, in his communication with the plaintiff's counsel, accompanied by the defendants, and that defendants referred plaintiff's counsel to said Ward to adjust and settle the differences between them, that said defendants are bound by the acts and declarations of said Ward, although he was only retained by H. F. Turner as such, unless such limitations of retainer were stated to plaintiff or his counsel."

This was sufficiently favorable to the defendants. It was really of no importance whether Mr. Ward was counsel for one or all the defendants, if they united in referring Mr. Thomas to him to adjust the mode of preparing the papers; and, in our opinion, there was evidence from which the jury might find such an authority to have been given by the defendants jointly.

We consider the fourth exception untenable. If it was usual to pay a commission for such services, it was properly charged in this case there being no evidence, to show that there was a special agreement to render the services without pay, or for less than the customary commission.

The sixth exception was taken on account of the admission of the testimony of Mr. Teackle, and certain letters of Gray & Co. and Harry Turner. The former has already been disposed of in considering the third exception, and the latter in considering the second exception respecting the correspondence of Harry Turner, most of the observations upon which are applicable to these letters.

The remaining bill of exceptions is in the following words:

"Upon the further trial of this case, after the instructions prayed for had been argued, and the court had decided to refuse the same, and had granted the two instructions set out on the defendants' seventh exception, the defendants' counsel having prepared out of court their exceptions thereto, and to the other points of law ruled by the court and excepted to during this trial immediately after the court had so decided, and before the bailiff to the jury was sworn, or the jury had withdrawn from the bar of the court, presented their said exceptions, and moved the court to sign and seal the same before the verdict should be rendered; but the court refused so to do, and refused to consider the said exceptions, or either of them, under the rule of that court, November 25th, 1846, at the November term thereof.

"Ordered, that whenever either party shall except to any opinion given by the court, the exception shall be stated to the court before the bailiff to the jury is sworn, and the bill of exceptions afterwards drawn out in writing, and presented to the court during the term at which it is reserved, otherwise it will not be sealed by the court."

Turner et al. *v.* Yates.

In Walton *v.* The United States, 9 Wheat. 657, this court said, "we do not mean to say, (and in point of practice we know it to be otherwise,) that the bill of exceptions should be formally drawn and signed before the trial is at an end. It will be sufficient if the exception be taken at the trial and noted by the court with the requisite certainty, and it may afterwards, according to the rules of the court, be reduced to form and signed by the judge; and so in fact is the general practice. But in all such cases the bill of exceptions is signed *nunc pro tunc*, and it purports on its face to be the same as if it had been reduced to form and signed during the trial; and it would be a fatal error if it were to appear otherwise; for the original authority under which bills of exception are allowed has always been considered as restricted to matters of exception taken pending the trial and ascertained before the verdict."

To what was there said this court has steadily adhered. 4 Pet. 106; 11 Pet. 185; 4 How. 15. The record must show that the exception was taken at that stage of the trial when its cause arose. The time and manner of placing the evidence of the exception formally on the record are matters belonging to the practice of the court in which the trial is held. The convenient despatch of business, in most cases, does not allow the preparation and signature of bills of exceptions during the progress of a trial. Their requisite certainty and accuracy can hardly be secured, if any considerable delay afterwards be permitted; and it is for each court in which cases are tried to secure, by its rules, that prompt attention to the subject necessary for the preservation of the actual occurrences on which the validity of the exception depends; and so to administer those rules that no artificial or imperfect case shall be presented here for adjudication. The rule of the Circuit Court for the District of Maryland is unobjectionable, and this exception is overruled.

The judgment of the Circuit Court is affirmed with costs.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs and interest until paid, at the same rate per annum that similar judgments bear in the courts of the State of Maryland.