ATCHISON, T. & S. F. RY CO. vs DICKENS.

Opinion rendered June 14, 1907.

(103 S. W. Rep. 750).

1. *Evidence—Like Injuries From Same Cause.*

Evidence that similar accident had occurred at same place about a month later was incompetent, in an action for the death of a person killed in a cinder pit.

2. *Same—Other Cinder Pits—Safe Guards from Injury.*

Evidence that no barrier was erected across track leading to this pit, but that another pit in the same yard had barrier was inadmis-

sible in an action for the death of a person killed in pit; evidence lacking to show pits were the same or that barrier could have prevented injury.

3. *Master and Servant—Servant's Injuries—Risk.*

In absence of barriers across track at cinder pit, the servant working in the pit assumes the risk of injury.

4. *Written Contracts—Question for the Court.*

Where a written contract is clear in its terms and uncontradicted, question is for the court to decide as to whether person contracting for work is independent contractor or not.

5. *Master and Servant—Servant's Injuries—Charge to Jury.*

In action for negligently causing the death of a servant brought against a master, the question as to whether the person causing the injury was in the employ of an independent contractor or of the company employing the deceased being left to the jury, to give a charge on the master's liability for an injury due to his negligence together with a concurrent act of negligence of an employe of an independent contractor to be applied to the case either if jury found that the person causing the injury was the servant of an independent contractor or a fellow servant of the injured person, was error.

6. *Fellow Servant—Question for Jury.*

An assistant hostler whose duty is to move engines from one part of the yards to another is the fellow servant of the person whose duty is to clean cinders out of engines in a cinder pit. In an action brought for negligently causing the death of a person, evidence was examined and was held insufficient to permit submitting the case to the jury.

Error to the United States Court for the Southern District of the Indian Territory; before Justice Townsend, February 21, 1905.

Action by Letty Dickens against the Atchison, Topeka & Santa Fe Railway Company. From a judgment for plaintiff, defendant brings error. Reversed and remanded.

On the 9th day of November, 1902, Henry Dickens, the deceased, was in the employ of defendant as an engine

cleaner at the station of Purcell, and at the time of receiving the injuries causing his death was engaged in cleaning an engine at a cinder pit of defendant in the Purcell yards. While the deceased was so engaged, one H. A. Cooper, a coal heaver, mounted one of defendant's engines which had been left standing at the coal chute in the yards, under steam. For some reason, Cooper, attempted to move the engine. It got beyond his control, ran down the tracks, and struck an engine standing over the cinder pit and under which the deceased was at work, pushing this engine along the track and over a turntable. Cooper then reversed his engines, and it started in an opposite direction and again ran over the cinder pit. As its speed increased, Cooper became frightened and jumped from the engine, which moved out into the yards and onto the main track, and finally stopped four or five miles north of Purcell. Whether deceased was injured from the result of the passing of the engine over the pit the first or second time does not appear, nor is it important to know. Cooper was an employe at the coal chute to handle coal from the chute into the engines, and was employed by one G. W. Closson, with whom the railway company had a contract in writing for the handling of all coal from cars to the chute and from the chute to the engines at the station at Purcell, employing and discharging his own laborers. Cooper was clearly incompetent to run an engine.

A cinder pit is a depression beneath the track. The pit in question measures 12¾ inches in depth beneath the bottom of the rails at its deepest place, and is 77 feet in length. The depression is deepest in the center, and gradually decreased to nothing at either end. The engine is run on the track, over the pit, and the engine wiper, or "cinder pit man," as he is indiscriminately called in this case, gets under the engine to clean it of clinkers and cinders. It was this duty that the deceased was performing, without any negligence on his part,

when he received the injuries of which he died. The engine over the pit, which was being cleaned was No. 586. The other, the one that ran into it was No. 601. The accident occurred about 10 o'clock p. m. ' Engine 601 had been set out at the coal chute for the purpose of being supplied with coal by one of the company's hostlers, by the name of W. T. Seaford, whose duty it was to handle engines for that and other purposes in the yard.

Verdict and judgment for the plaintiff, defendant in error, for $5,000.

*Henry E. Asp* and *Charles H. Woods*, for plaintiff in error.

*J. W. Hocker*, for defendant in error.

CLAYTON, J. (after stating the facts). The complaint alleges four acts of negligence on the part of the railway company, as follows: "(1) That it carelessly left an engine standing on its tracks under full head of steam with no competent and fit person in charge thereof. (2) That its tracks at the coal chute and cinder pit are connected by a series of switches and turn-outs, and at the time the engine was left standing at the coal chute they were so negligently and carelessly arranged by the employes of the company, whose names plaintiffs do not know and have no means of ascertaining, that an engine starting at the coal chute towards the cinder pit would run directly into an engine standing over the cinder pit under which deceased was at work. (3) That defendant failed to furnish deceased a reasonably safe place for the doing of the work he was required and directed to do. (4) That defendant failed to furnish an adequate and sufficient number of competent and fit persons to operate its locomotives, and failed to see that its engines were operated by competent persons, and failed to furnish an adequate number of competent persons to have charge of and operate its switches and turnouts so as to prevent an engine running into one set over the cinder pit

in the manner said engine did run into the engine under which
Henry Dickens was working. The answer denies every allega-
tion in the complaint, and avers: "First, That Henry Dickens
was injured through the negligence of one H. A. Cooper, who
was then not in the employ of defendant, and was in no way
responsible to the defendant for his acts. That said Cooper,
without authority got upon an engine of defendant standing
on one of its side tracks at the coal chute of defendant for the
purpose of being loaded with coal to be used in the service of
defendant, while the steam on said engine was carefully shut
off; the engine being safely and properly left in said position.
That said Cooper opened the throttle of said engine and caused
it to move and failed to control it, causing it to back rapidly
over the tracks, and against the engine which the deceased
was under. That Cooper was not an employe of the defendant,
but was the employe of one G. W. Closson, with whom the
defendant had a contract to unload cars of coal into the coal
chute at Purcell, and to unload coal from the chute into the
engines; the said Closson being an independent contractor,
for whose acts the defendant was in no way liable. And,
second, without waiving the first averment, that the said
Cooper, by whose negligent act alone the injury to the deceased
occurred, was a fellow servant of the deceased. There were
18 requests for instructions presented by the defendant, most,
if not all, of which were refused and exceptions saved. There
were 10 grounds set up in the motion for new trial, and there
is filed an assignment of errors, containing 54 specifications
of error; and, as if this were not enough, or possibly for the
purpose of emphasizing the fact that they were well taken,
they are set out the second time in the record. That we may
get to the real and substantial issues presented here, we will
eliminate one of these copies; and, as appellant's counsel have,
by their brief, argued the first five of the specifications, deeming,
no doubt, that the others were not of sufficient importance to
be noticed, we feel that we can safely also eliminate the other 49.

As to the allegation of the incompetency of the employes in and about the yard, inasmuch as the proof shows that Seaford, the assistant hostler, is the man who "spotted" engine No. 601 and left it unguarded, and as it is not shown that any other person had anything to do with the accident, if they were in fact incompetent, it is only necessary as to this point to consider the proof as to him. We will say, however, in passing, that there was no testimony offered which tended to show that any other employe of the company was incompetent. As to Seaford, the testimony of plaintiff showed that he had had over one year's experience as an assistant hostler, or "fire knocker," as they are sometimes called; that prior to that time he had had three years' experience in running a traction engine. He had never had an accident to occurr with him in either employment. He had been regularly promoted to the positions. No witness testified that he was incompetent, or to any act of his that would tend to show that fact, unless, it was that he left the engine unguarded; and every witness who testified as to that said that, to leave an engine in this condition, and adjusted as this one was, was safe. A number of witnesses testified for plaintiff that he was a competent hostler. The hostler's duties were shown to be to handle the engines; to move them from place to place in the yards; to "spot" them at the chute, over the pit, or wherever it was necessary for them to be. This was all the testimony that was offered to show the incompetency of the deceased's fellow servants; and, of course, that is not sufficient.

As to the negligent arrangement of the tracks and switches leading from the chute to the pit, there was absolutely nothing showing that they were in an improper condition. The only thing shown was that the track ran straight from one point to the other, and this was a side track, and, as it is evident that an engine must be taken from one point to the other, to be cleaned at one and coaled at the other, we can see no objection

to its being straight, or any advantage in its being crooked. Of course, if the two points were connected by a straight track, it would give an opportunity for a "wild" engine leaving the chute in the direction of the pit to run over it; but, as the very purpose of the construction of the pit is to run the engine over it to be cleaned, it is hard to conceive how it would be an act of negligence to so place the tracks.

As to whether the company failed to furnish a safe place for the deceased to work by a negligent construction of the pit, the evidence showed that it was made of concrete masonry and iron, on which the track was laid. The depth and dimensions have been stated. It was shown, and not disputed by the proof, that they were of approved make, in common use on the road, and in good repair. The only evidence tending in any wise to show any negligent construction or condition was that another accident had happened at the same pit about a month later, when the pit was in the same condition; but how it happened the cause whether by an engine colliding with one on the pit, or by burning by steam, from an engine or the slipping of the foot or what other cause is not shown—simply that an accident happened. It might have been that a man had accidentally been shot there, as far as the proof shows. Juries can learn nothing from such testimony. It proves nothing and could only serve to prejudice the case of defendant. It was clearly irrelevant, and so the court at first held; but by some means the proof was introduced. And that this pit had no barrier erected across the track at the pit, while another one in the same yards had; and this was all the testimony on that point. There was no evidence that the condition of the two pits were the same, or that, if such a barrier had been erected, it would probably or possibly have arrested the force of an engine running against it under full steam, with sufficient force to drive an engine standing upon it 150 yards, as the proof showed was the effect of this engine. It is easy to imagine

why a barrier might be a necessity at one pit and not at another. One may have been located in a low place, where the tracks leading to it would decline so that loose cars or engines, of their own momentum, might run down upon it, creating a necessity for a barrier, while another might be placed upon an elevation so that loose cars or engines would run the other way; or it may have been on level ground, where loose cars would run neither way. There was nothing to show the structure of the barrier, or what its purpose really was. The law does not permit inferences to be drawn to prove a fact simply because one thing in its structure is different from another. Before evidence of the condition of other things can be admitted in evidence, by which a comparison may be drawn, it must at least be shown that the conditions surrounding the two are the same, and that if the one had been constructed as the other, the accident would probably not have happened. There were many witnesses, some of whom were experts called by the defendant, who had seen the pit and had worked around it and at it, all of whom testified that it was safe. "Perfectly safe, absolutely safe," was the language used by some. Because one pit on the defendant's extensive line of railway was provided with a barrier, and this one not, is that alone sufficient to establish negligence? Especially as against all the other proof in the case that it was a proper and a safe one? This testimony was objected to by the defendant, and the objection was over-ruled and an exception saved. We think the objection should have been sustained.

Besides this, the deceased, in his workings about the pits saw or ought to have seen the conditions, and knew them, and therefore assumed the risk. The truth of the whole matter is that the proof points so certainly and unerringly to the fact that the negligent handling of the engine No. 601, by Cooper, together with the negligent act of the company in leaving its engine stand with full steam, without any one in charge of it,

if that were negligence, was not only the proximate, but the sole cause of the accident; and it is folly to hunt for or claim any other. And this leaves for our consideration the questions: First, did Cooper, by virtue of his employment, stand in such relation to the company, as to make it responsible for his negligent acts? Or, if not, second, did the fact that the company allowed its engine No. 601 to stand at full steam at the chute, without some one in charge of it, amount to such negligence on its part as would render it liable for the results of the negligent act of an employe of an independent contractor?

Cooper was employed as a coal heaver by a man by the name of G. W. Closson, who had a written contract with the company, in force at the time of the accident, to handle for it the fuel necessary to meet its needs at a large number of stations on the company's road in Illinois, Iowa, Missouri, Kansas, Oklahoma, Indian Territory, Colorado, and New Mexico, among them Purcell, the place of the accident. His compensation was stipulated to be paid to him monthly on vouchers. He was to furnish the labor. The company was given no control over his employes, only in case the work was not done to its satisfaction, when it could step in an do the work itself, and under the contract Closson was held responsible for the acts of negligence of his employes. All this is shown by the face of the written contract. The oral proof was that the chute foreman was employed by Closson, and the men working at the chute were employed and discharged by this foreman, and that the work was under Closson's contract; and there is no evidence to the contrary. It is our opinion that the written contract on its face shows that Closson was an independent contractor. "When the contract is for something that may lawfully be done and is proper in its terms, and there has been no negligence in selecting a suitable person to contract with in respect to it, and no general control reserved

either as respects the manner of doing the work or the agents to be employed in doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work, and not in the several steps as it progresses, the latter is neither liable to third persons for the negligence of the contractor as master, nor is he master of the persons employed by contractor so as to be responsible to third persons for their negligence." Cooley on Torts, p. 646. "In every case the decisive question is, Had the defendant the right to control in the given particular the conduct of the person doing this work?" Thompson, Neg. vol. 1, § 622. "One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work entirely in accordance with his own ideas, or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor, and not a servant." Sherman & Red. Neg. § 165. "When a person lets out work to another to be done by him, such person to furnish the labor and the contractee reserving no control over the work or workmen, the relation of contractor and contractee exists, and not that of master and servant, and the contractee is not liable for the negligent or improper execution of the work by the contractor." Wood, Master & Serv. 593. "The employment is regarded as independent when the person renders services in the course of an occupation representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished. Mechem on Agency, § 747. "An independent contractor may be defined as one who in the course of an independent occupation, prosecutes and directs the work himself, using his own method to accomplish it, and representing the will of the company only as to the result of the work." Elliot on Railroads, § 1063. "The accepted doctrine is that, in cases where the essential object of an agreement is the per-

formance of work, the relation of master and servant will not be predicated as between the party for whose benefit the work is to be done and the party who is to do the work, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be executed." Labatt Canada Law Journal, vol. 40, p. 554. The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Singer Mfg. Co. vs Rahn, 132 U. S. 518, 10 Sup. Ct. 175, 33 L. Ed. 440. See, also, Uppington vs New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; Powell vs Construction Co., 13 S. W. 691, 88 Tenn. 692, 17 Am. St. Rep. 925; Carlson vs Stocking, 65 N. W. 58, 91 Wis. 432; Robinson vs Webb, 11 Bush (Ky.) 464; Harrison vs Collins, 86 Pa. 153, 27 Am. Rep. 699.

Taking into consideration the magnitude of the work to be performed, extending along the line of the railroad company from Illinois to New Mexico, including Chicago, Kansas City, Denver, and the other large centers of population along its line, and the other provisions of the contract showing that the work was in the control of Closson, and that the company was only interested in its results, we conclude, as heretofore stated, that under the contract Closson was an independent contractor, and not a servant of the company; and as this contract was in writing, uncontradicted by any other writing or other proof, and was unambiguous in its terms, requiring no verbal proof to explain any of its terms, its construction was for the court and not for the jury. "It is certainly true, as a general rule, that the interpretation of written instruments properly belongs to the court, and not to the jury." Brown vs McGran, 14 Pet. (U. S.) 493, 10 L. Ed. 550. "The scope and effect of the contract in question depended wholly upon written correspondence, and in no degree upon extrinsic cir-

cumstances, and were therefore to be determined by the court."
Hughes vs Dundee Co., 140 U. S. 104 11 Sup. Ct. 727, 35 L.
Ed. 354. To the same effect are Turner vs Yates, 57 U.S.
23, 14 L. Ed. 824; Bliven vs New Eng. Screw Co., 64 U. S.
433, 16 L. Ed. 510, 514; Hamilton vs Liverpool, etc., Ins. Co.,
136 U. S. 255, 10 Sup. Ct. 945, 34 L. Ed. 419. "If the contract
of employment has been reduced to writing, the question
whether the person employed was an independent contractor
or merely a servant is determined by the court, as a matter
of law." Monograph note, by Mr. Labatt, on "Liability of the
Employer for the Torts of an Independent Contractor," vol.
40, Canada Law Journal, 644. See, also, Pioneer Co. vs Hansen,
52 N. E. 17, 176 Ill. 100; Linnehan vs Rollins, 137 Mass. 123,
50 Am. Rep. 287; Scott vs Springfield, 81 Mo. App. 312; Rogers
vs Florence R. Co., 9 S. E. 1059, 31 S. C. 378.

In this case the question as to whether Cooper was the
employe of the company or of an independent contractor was
left to the jury. The charge on this point was: "The court
instructs you in this case that all the employes engaged in
handling the engines in the yards at Purcell were fellow servants
of the plaintiff's intestate, and that if the plaintiff's intestate,
Henry Dickens, was injured by reason of the negligence of any
of said employes of the defendant, the defendant would not
be responsible to the plaintiffs for damages in this case. You
are also further instructed that if you find that the accident
to the said Henry Dickens happened by the negligent handling
or movement of the locomotive of defendant by one H. A.
Cooper, a coal heaver, and that the said Cooper was not in the
employ of the defendant company, but of an independent
contractor, then and in that event, plaintiffs cannot recover
in this action, and your verdict should be for the defendant."
This was excepted to. It is our opinion that the court should
itself have construed the contract to be that Cooper was the
employe of an independent contractor, and then, if there were

sufficient evidence upon which to found it, should have given the jury the law relating to defendant's liability for an injury growing out of negligence upon the part of the master concurring with the intervening act of negligence of an employe of an independent contractor. And the court did give an instruction as to that, and a very proper one if the court had found, first, that Cooper was an employe of an independent contractor, and second, that there was sufficient proof of the negligence of the master to allow the case to go to the jury. The charge upon this point was: "It is no defense, in an action for negligent injury, that the negligence of a third person contributed to cause the injury of which plaintiffs complain, if the negligence of the defendant was an efficient cause of the injury. In such cases, the fact that some other cause operates with the negligence of the defendant in producing the injury does not relieve the defendant from liability; his original wrong concurring with some other cause, and both operating proximately, at the same time, in the production of the injury. In such cases the defendant is liable to respond in damages, whether the other cause was a guilty or innocent one.     *      * But an injury that could not have been foreseen or reasonably anticipated as a probable consequence and that probably would not have resulted from it had not the interposition of some new independent cause interrupted the natural sequence of events and turned aside their course and produced it, is not actionable; and such act of negligence is the remote cause, and the independent intervening cause is the proximate cause of the injury. And if you are satisfied from the evidence that the intervening cause in this case was the movement of the engine by the coal heaver, Cooper, and which could not have been foreseen or reasonably anticipated by defendant, then the court would instruct you as a matter of law that any negligence on the part of the defendant was the remote cause, and that the action of the said Cooper was the proximate cause

of the injury.   If you are satisfied such is the case, your verdict should be for the defendant.   No act contributes to an injury, in the legal acceptance of that term, unless it is the proximate cause of the injury, and no one is liable for the injury unless it was the natural and probable result of his act."

But this was to be applied to the case either if the jury found that Cooper was a fellow servant, or the servant of an independent contractor; and the law applicable to the two cases is different.   Had the court construed the contract to be that Cooper was the employe of an independent contractor, as we think it should have done, then the question would have been:   Was there sufficient evidence of the company's negligence in the act which was the proximate cause to justify the submission of the case to the jury?   We have pointed out that there was no proof of any negligent act of defendant, unless it were the fact that the engine was allowed to stand on the track at the coal chute, with full head of steam, and unguarded.   Was this an act so negligent and existing under such circumstances as that it could be attached to the intervening act of Cooper, so as to make the defendant liable for the injury to the deceased?   It was at 10 o'clock at night.   The engine had been placed at the coal chute for the purpose of being supplied with coal and when supplied must be moved away.   Hence the necessity for steam.   It was in the company's yards, and on its tracks, and at a proper place.   The engineer who left it there was a competent man.   The engine was in good condition.   The steam had been shut off, and the lever operating the steam valve was so adjusted that no steam could escape into the cylinders or other part of the machinery to cause it to move.   The only evidence as to whether or not it was safe to allow an engine to so stand was by the railroad employes, who testified that it was.   As it stood, unmolested, it was harmless.   It was shown by the proof that the company did not permit men who worked at the chute to handle the

engines, and that this was known to the employés at the chute. The engine was handled by the hostler, the man who had control of the yard, and his assistants, all shown to be competent men, or at least not shown to have been incompetent. The only danger that could possibly arise from leaving the engine unguarded under such conditions would be that some one unaccustomed to handling engines might possibly get upon it, and in railroad language, "run it wild," and this is the only act of negligence, if it were negligence, that was at all proven against the defendant. When it is considered that the occurrence was in the night, and within the yards, a time and place when and where no persons were shown to have been, or reasonably could have been expected to be, except the employés of the defendant working in the yards handling the engines, and those of Closson working at the chute supplying the coal, those in the yard competent men and those at the chute forbidden to handle the engine , and the engine itself in good condition, with steam shut off, we do not think, under the circumstances, that negligence is shown on the part of the defendant. But, conceding that this was negligence, then, was it the proximate cause of the injury, and the natural and probable result of the act of the engineer that could have been reasonably foreseen and contemplated by him? The court's charge on this point is as follows: "But an injury that could not have been foreseen or reasonably anticipated as a probable consequence, and that probably would not have resulted from it had not the interposition of some new and independent cause interrupted the natural sequence of events and turned aside their course and produced it, is not actionable."

There is no question but that the act of Cooper was negligence in a high degree, and, if the company were also negligent, his act was the intervening cause of the injury. But, he being an employé of an undependent contractor, before the company can be held liable, it must not only appear that

it was guilty of an act of negligence, but that act must have been so connected with the injury and the intervening act of Cooper as to constitute a proximate cause of the injury, and it must have been an act which when done would naturally and probably result in the injury, and this result must have been so apparent at the time, that the engineer could reasonably foresee it. It must be established that there was a causal connection between the act of negligence of the company and the injury, and that this causal connection had not been broken by the interposition of some independent force that took advantage of the situation to accomplish something not the probable or natural effect of the situation as it existed. In the case of Ins. Co. vs Boon, 95 U. S. 117, 24 L. Ed. 395, the Supreme Court of the United States say: "The proximate cause is the efficient cause—the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controling agency, are not the proximate causes and the responsible ones." In Railway Co. vs Kellogg, 94 U. S., 469, 24 L. Ed. 256, the same court say: "The question always is: was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole or was there some new and independent cause intervening between the wrong and the injury? In the case of Goodlander Mill Co. vs Standard Oil Co., 63 Fed. 405, 11 C. C. A. 253, 27 L. R. A. 583, decided by the Circuit Court of Appeals for the Seventh Circuit, the court, in laying down the rule and quoting from both the above cases say: "The remote cause is that cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof. The absence of the valve was, doubtless, in a sense, a cause of the injury—an antecedent cause. But, where the negligent act is not wanton or malum in se, the law stops at

the immediate and does not reach back to the antecedent cause. The casual connection between the negligence and the hurt is interrupted by the interposition of an independent human agency, and as Mr. Wharton expresses the thought, 'the intervener acts as a nonconductor and insulates the negligence.' The test is: was the intervening efficient cause a new and independent force, acting in and of itself in causing the injury and superseding the original wrong complained of, so as to make it remote in the chain of causation, although it may have remotely contributed to the injury as an occasion or condition? Here the gas company gave the negligent act a mischievous direction. If but for such interposition the defendant's negligence would have produced no injury, the causal connection is broken, because the intervening act made the act of negligence, otherwise innocuous, operative to injury. The injury must be the natural and probable consequence of the negligent act, and such as ought to have been foreseen in the light of attending circumstances.    *    *    *    . The negligent omission of the valve did not necessarily set the other causes in operation. It was, in the language of the Boon case, above referred to, the incidental cause, or the instrument of a superior and controling agency and it was therefore not the proximate and responsible one. If the owner of a magazine in which gun powder is stored should carelessly leave open its door, and a responsible human being should enter with a lighted candle, knowing of the presence of the gunpowder and an explosion should ensue, could it be affirmed that in any legal sense, the careless act of leaving open the door was the cause of the explosion?''

Applying this rule to the facts of this case, and conceding for this purpose that the act of leaving the engine unguarded was a negligent one, was it the proximate cause of the injury? Was the act of Cooper the ''natural and probable'' consequence of the act of the engineer, and so palpable to him that he would

have reasonable grounds to believe it would occur? Or, would the injury have occurred if the causal connection between the wrong of the company and the injury had not been broken by the intervening negligent act of Cooper? As the engine stood, to be supplied with fuel, the steam shut off, and in good condition it was harmless; and before it could possibly become an instrument of danger some independent, intervening cause must have thrown the lever and put on the steam. There were no children nor young and inexperienced persons around to be lured to the standing engine, and this case must not be confounded with that class of cases. If it became necessary to move the engine, the proof shows that experienced hostlers, whose duty was to handle engines in the yards, were within easy call. The company had provided them for that purpose, and they were there. The engine was not on the main track, so as to be in danger of collision with moving trains. Under these circumstances, when the hostler left his engine, was it probable to him that an inexperienced, unauthorized, and forbidden coal shoveler would mount the engine and attempt to move it? It was possible, but was it probable? It seems to us that the probabilities were all the other way, and that he could have had no reason to believe that such a thing would be done, and could not "reasonably have foreseen it." And this seems to have been the conclusion of the court that tried the case below. In the charge the court says: "You are instructed that it was the duty of the defendant to furnish a reasonably safe place for the deceased, Henry Dickens, to work, but that the defendant was not bound to foresee that such place would be rendered unsafe by an act of negligence of a fellow servant or stranger. If you are satisfied from the evidence that the said Cooper did move said engine against the engine under which deceased was engaged, such act could not have been reasonably anticipated or foreseen by the defendant;

said Cooper not being in the employ of defendant, or intrusted with the care or handling of engines." It seems to us that the court should have stopped here, and directed a verdict for defendant, instead of submitting to the jury the question as to whether under the circumstances the hostler could have reasonably foreseen and anticipated that the injury would follow from his act. This instruction was equivalent to a charge to return a verdict for the defendant, and we think that under the proof the court should have permitted it to stand as a peremptory instruction in its favor.

But there is another reason why the case should have been taken from the jury by a peremptory instruction. The proof shows conclusively that one T. R. Becktol, one of the company's engineers, had charge of the engine that day while it was being used on the main track, and brought it into the yards at about 7 or 8 o'clock on the evening of the accident, and after inspecting it left it standing 'on the "roundhouse track," below the coal chute. The proof shows that after these engines are brought into the yards, and while there they are under the control of the hostler and his assistants, as the accident occurred about 10 o'clock at night, this engine had been under their control for two or three hours. In the meantime, it had been moved by Seaford, the hostler, the man in charge, to the coal chute to be furnished with coal, and there left standing while this work was being done. It is not claimed, or if claimed, there is no proof of it, that the engine was put in its place at the chute—"spotted," as it is called—by any person other than the one whose duty it was to do so; and that was the hostler, Seaford, who was shown to have been a competent man. Seaford was unquestionably a fellow servant of the deceased, and therefore, if Seaford's act in leaving the engine at the coal chute unguarded was negligence, it was the negligence of a fellow servant; and whether Cooper was an employe of the company or of an independent contractor would

make no difference, because in the one case the injury would have resulted by the negligent act of a fellow servant (Seaford) concurring with the negligent act of another fellow servant (Cooper), and in the other it would have resulted from the negligent act of a fellow servant (Seaford), concurring with the negligent act of an employe of an independent contractor (Cooper); and in neither case would the company be liable.

Upon the theory of Cooper having been a fellow servant of deceased, if it be said that he was an incompetent man to handle engines, and therefore the company had failed in its duty in furnishing safe and competent men for that purpose, the answer is the company had not employed him for that purpose. He was competent for the purpose for which he was employed, shoveling coal and furnishing the engines with fuel. The company had furnished competent men to handle the engines, and had forbidden Cooper to do so, and therefore had done its duty in this respect.

For the errors above mentioned, the judgment of the court below is reversed and remanded.

GILL, C. J., and LAWRENCE, J., concur.