[Filed March 31, 1891.]

## J. J. WISEMAN v. N. P. R. R. CO.

WRITING — SECONDARY EVIDENCE OF CONTENTS, WHEN ADMISSIBLE. — Secondary evidence of the contents of a writing is admitted on the theory that the original writing cannot be produced by the party by whom the evidence is offered within a reasonable time by the exercise of reasonable diligence.

REASONABLE DILIGENCE, WHAT IS. — No precise rule can be laid down as to what shall be considered a reasonable effort, but the party alleging the loss or destruction of the document is expected to show that he has in good faith exhausted in a reasonable degree all the sources of information and means of discovery which the nature of the case would naturally suggest and which are accessible to him.

DEGREE OF DILIGENCE REQUIRED DEPENDS ON CIRCUMSTANCES OF EACH PARTICULAR CASE. — The degree of diligence which shall be considered necessary in any case will depend on the circumstances of the particular case, the character and importance of the paper, the purposes for which it is proposed to use it and the place where a paper of that kind may naturally be supposed to be found.

WRITING OUT OF STATE—SECONDARY EVIDENCE OF CONTENTS.—Where the cause of action or defense is founded upon an alleged writing, and both the execution and contents of the writing are denied, and the alleged writing is shown to be in the possession of a person residing outside the state, secondary evidence of its contents is not admissible unless a proper effort is made to obtain the original.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals.    Affirmed.

On March 19, 1890, the plaintiff J. J. Wiseman commenced an action in the circuit court of the state of Oregon, for the county of Multnomah, against the defendant to recover the sum of $398.72, the value of certain household goods claimed to have been lost by defendant in transit. The complaint alleges that on or about the 8th day of April, 1889, at Nunica, Michigan, the plaintiff delivered to the Detroit, Grand Haven & Milwaukee Railway Company a shipment in six boxes, one trunk, one roll of carpet, and two barrels containing household goods, the property of the plaintiff, for transportation to Salem, Oregon; that said shipment was in due time delivered in good order to the defendant as a connecting carrier, and that one of said boxes and one of said barrels, with their entire contents, were destroyed and never delivered to plaintiff, which household goods so destroyed were of the value of $373.05.    The defendant in its answer to the complaint admits the shipment by plaintiff and the delivery to the Detroit, Grand Haven & Milwaukee Railway Company of the household goods in question, and that the same was in due time received by defendant from the Detroit, Grand Haven & Milwaukee Railway Company, a connecting carrier; admits that one of the boxes and one of the barrels with the contents were destroyed, but denies any knowledge as to the contents or value thereof.    For a further and separate answer and defense, defendant alleged that the shipment of freight mentioned in the complaint consisted of household goods, and that the same was shipped by plaintiff and received and accepted by the Detroit, Grand Haven & Milwaukee Railway Company as well as the defendant, a connecting line, under a contract with plaintiff, that if for

any cause there should be a total loss of said freight and a liability on the part of the common carrier receiving the same, or over whose line the same was being or was transported, the total liability therefor, if any there should be, would be the sum of $5 per hundred pounds weight of said freight, and the same was received and accepted by defendant and shipped by plaintiff on said condition. The defendant further answering, and as a separate defense, alleged that at the date of shipment by plaintiff, to wit, April 8, 1889, in order to obtain the benefit of the reduced rate of freight charges from the ordinary tariff rate charged therefor, the plaintiff and the Detroit, Grand Haven & Milwaukee Railway Company contracted and agreed in writing that in consideration of such reduced rates, the plaintiff, in case of any damage or loss to said goods arising by damage by fire while at stations or in transit, would and did release said company, and each and every other company over whose lines said goods might pass to destination, from any and all damage occurring to said goods; that said plaintiff was given and obtained the benefit of said reduced rates and executed said contract of release accordingly. The reply denies the new matter alleged in the answer.

On the trial, the plaintiff gave evidence tending to prove the issues on his part, and then rested. Defendant then gave evidence tending to prove the execution by plaintiff of the release and contract mentioned in the answer; that it was executed in duplicate, one copy being attached to the bill of lading, and the other was, by the agent of the Detroit, Grand Haven & Milwaukee Railway, at Nunica, Michigan, forwarded to the traffic manager of that road at Chicago, Ill. Defendant then called Alfred Watts, who was claim clerk of the Northern Pacific Railroad Company at Portland, Oregon, who testified he was clerk in the office of Mr. Fulton, general freight agent of the defendant at Portland; that he had telegraphed to the claim agent of the defendant at St. Paul to ascertain if a release had been made on the plaintiff's shipment of goods from Nunica, and if so to send the origi-

nal release that was signed by Mr. Wiseman; that the claim agent at St. Paul telegraphed back that the files in the office of the traffic manager at Chicago had been searched and the release could not be found; that the release never was in his office at Portland, and the parties who handled the way-bill of plaintiff's goods said there was no release attached to it when it reached its destination. The defendant then offered the deposition of the agent at Nunica to prove the contents of the release, but the court refused to admit second-ary evidence of its contents, to which ruling defendant duly excepted, and assigns the same as error on this appeal.

*J. N. Teal,* and *Sanderson Reed,* for Respondent.

*Dolph, Bellinger, Mallory & Simon,* for Appellant.

Bean, J.—By section 691, Hill's Code, it is provided that "there shall be no evidence of the contents of a writing other than the writing itself, except in the following cases: * * *

"2. When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default." * * * This section is a declaration of the common law rule. The theory upon which secondary evi-dence of the contents of a writing is admitted is that the original writing cannot be produced by the party by whom the evidence is offered within a reasonable time by the exercise of reasonable diligence. The question is always one of diligence in the effort to procure the original. No precise rule has been or can be laid down as to what shall be considered a reasonable effort, but the party alleging the loss or destruction of the document is expected to show "that he has in good faith exhausted in a reasonable degree all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him." (1 Greenleaf on Ev. § 558; *Simpson* v. *Dall,* 3 Wall. 460; *Johnson* v. *Arnwine,* 42 N. J. L. 451, 36 Am. Rep. 527; *Kelsey* v. *Hanmer,* 18 Conn. 310.) Thus in *Mariner* v. *Saun-ders,* 5 Gilm. 117, the court says: "From the nature of the

subject, there is some difficulty in laying down a general rule defining the extent and vigilance of the search which a party must make before the court may conclude that the paper is destroyed or lost. As a general rule, however, we may say that when, from the ownership, nature or object o a paper, it has properly a particular place of deposit, or where from the evidence it is shown to have been in a particular place or in particular hands, then that place must be searched by the witness proving the loss, or the person produced into whose hands it has been traced. The extent of the search to be made in such place or by such person must depend in a great degree upon the circumstances. Ordinarily, it is not sufficient that the paper is not found in its usual place of deposit, but all papers in the office or place should be examined. On the whole, the court must be satisfied that the paper is destroyed and cannot be found. It is true, the party need not search every possible place where it might be found, for then the search might be interminable, but he must search every place where there is a reasonable probability that it may be found." This rule is founded on reason and justice, and to require any less degree of diligence would be to defeat the object of reducing agreements to writing. As was said in *Rankin* v. *Crow,* 19 Ill. 629: "The party wishing to avail himself of the benefit of such secondary evidence should be required to make at least the same effort that it is expected the party would make if he were to lose the benefit of the evidence if the instrument were not found."

The degree of diligence which shall be considered necessary, in any case, will depend upon the character and importance of the document, the purposes for which it is expected to be used, and the place where a paper of that kind may naturally be supposed to be found. If the document be a valuable and important one, which the owner would be likely to preserve, a more diligent search will be required than if the document is of little or no value. The purposes for which it is proposed to use it on the trial will also have

an important bearing in determining the degree of diligence required. If the cause of action or defense is founded on the supposed writing, the party offering the evidence will be required to show a greater degree of diligence in the attempt to produce the original than if it is desired to be used as evidence in some collateral matter. The proof of search and proof of loss required is always proportionate to the character and value of the paper supposed to be lost. (*American Life Ins. Co.* v. *Rosenagle,* 77 Pa. St. 507.)

The existence and contents of the supposed contract, as well as the claim of defendant based upon it, is denied by the plaintiff in the case at bar. The issue thus being joined, its execution and contents were very material to defendant in establishing its defense. Indeed, defendant seeks to exempt itself from liability solely by reason of this contract. It admits having received as a common carrier plaintiff's goods, and that while in its possession they were destroyed, but it seeks to escape liability by virtue of this contract. It then became of the utmost importance to both plaintiff and defendant that the original contract, if such a contract was made at all, be produced on the trial, so that there might be no controversy as to its contents, and that the court might declare its legal effect to the jury. Before defendant should be permitted to give secondary evidence of its contents, it should prove that it had exercised the utmost diligence to procure the original (*Smith* v. *Cox,* 9 Or. 327), and this it failed to do. No competent evidence whatever was offered to prove any search in the office of the traffic manager at Chicago, where it was shown the document was most likely to be found. All that the witness Watts said about the supposed search was clearly hearsay and incompetent evidence. (*Lawrence* v. *Fulton,* 19 Cal. 683.) It did not in any way tend to prove that any effort had been made in the Chicago office to find the original paper. The testimony of the traffic manager, or some person in his office having the custody of such papers, should have been had, or some proper effort made to obtain it, showing what effort, if any,

had been made to find the original. Indeed, counsel for defendant did not seriously contend that it had brought itself within the rule concerning the admission of secondary evidence, if proof of the loss of the original is required, but he claimed that all that was necessary for defendant to do was to show that the original was in the possession of a person outside of this state, and that no further proof was required. That when it showed that the original contract was in Chicago, it was entitled to give secondary evidence of its contents without further proof, and in support of his position cites the following authorities: *Burton* v. *Driggs,* 20 Wall. 134; *Gordon* v. *Searing,* 8 Cal. 49; *Beattie* v. *Hilliard,* 55 N. H. 428; *Brown* v. *Wood,* 19 Mo. 475; *Shepard* v. *Giddings,* 22 Conn. 282; *Ralph* v. *Brown,* 3 Watts & S. 395; *Gordon* v. *Tweedy,* 74 Ala. 232, 49 Am. Rep. 813. The broad doctrine is stated in these authorities that if books or papers necessary as evidence in a court in one state be in the possession of a person living in another state, secondary evidence without further showing may be given to prove the contents of such papers. As we have already said in effect, each case must largely depend on its own particular circumstances as to what showing is sufficient in order to admit secondary evidence of the contents of a writing, and the language used in the cases above cited must be interpreted in the light of the facts of each case. None of these cases goes so far as to hold that where a defendant relies upon the contents of a writing to exempt himself from liability, and both the execution and contents of the supposed writing are denied, and the alleged writing is shown to be in the possession of a person outside of the state, that secondary evidence of the contents of such writing is admissible unless an effort is made to produce it. And besides, the doctrine stated in these authorities is denied by authorities of equal weight, and even by some of the same courts. Thus in *Turner* v. *Yates,* 16 How. 14, it was held that proof that an invoice of goods was in London was not a sufficient showing to admit secondary evidence of its contents in the circuit court of the

United States for the district of Maryland, the court saying:
"If the paper was in the hands of the consignees in London,
secondary evidence was not admissible.   If as parties, they
were entitled to notice to produce the paper; if as third
persons, their depositions should have been taken, or some
proper attempt made to obtain it."   (*Wood* v. *Cullen*, 13
Minn. 394; *Dickinson* v. *Breeden*, 25 Ill. 186; *McGregor* v.
*Montgomery*, 4 Pa. St. 237; Wharton on Ev. § 130.)   The
rule laid down in the authorities just cited we think is
founded on reason and justice and imposes no hardship
on the defendant.   By defendant's own showing, the last
known place of deposit of the contract it claims plaintiff
executed was in the office of the traffic manager in Chicago,
and the law provides an easy and simple method of taking
the deposition of a witness residing out of the state, and
his deposition should have been taken, or some proper effort
made to obtain it.   The fact that the person to whose posses-
sion the paper was traced resided out of the state, did not
excuse defendant from a diligent effort to procure it.

Judgment of the court below is therefore affirmed.