[No. 434.    January 6, 1892.]

## AUGUST KIRCHNER, APPELLEE, v. SARON N. LAUGHLIN, APPELLANT.

CONTRACT—SUIT FOR BREACH—BEST EVIDENCE.—In a suit for breach of a verbal contract alleged to have been made by defendant in discharge of an alleged written contract not purporting on its face to have been signed by defendant personally, but to have been made by another for defendant as his agent, where defendant pleaded the general issue, and, by special plea, denying under oath the execution of the alleged written contract, or that he had authorized any person to execute it for him, it was error to permit a witness in behalf of plaintiff to testify, over the objection of defendant, as to the contents of a letter, purporting to authorize such other person to execute such alleged written contract in his own behalf and that of defendant, on a mere showing that the person in whose possession the letter was, was beyond the jurisdiction of the court, where it was not shown that the letter had been lost or destroyed, or that any effort had been made to produce it. The objection was sufficiently specific to apprise the court that the letter itself was the best evidence of its contents, and that secondary evidence thereof was inadmissible.

ID.—CROSS-EXAMINATION—EVIDENCE.—In such case, where the witness in behalf of plaintiff testified that defendant wrote to him several letters, in which defendant expressed the wish to have his name stricken from the contract, the court below erred in not permitting the witness to be cross-examined as to the reason given in the letters, if any, for such wish.

ID.—IMPEACHMENT OF WITNESS—EVIDENCE.—Where it is desired to con-
tradict a witness by letters written by him, before they can be admit-
ted in evidence, a proper foundation must be laid for their admission,
by calling the witness' attention to those parts of them which are to
be used for that purpose, under section 2084, Compiled Laws, 1884.

ID.—RATIFICATION OF AGENT'S ACTS—INSTRUCTIONS—EVIDENCE.—Where
the defendant testified that he knew of the alleged contract, but did
not know that his name had been signed to it, an instruction that if
the jury found that defendant had knowledge of such contract, and of
plaintiff's performance of his part of it, and acquiesced in such con-
tract, and in the conduct of his alleged agent thereunder, "he ratified
the same, and is bound thereby, even if there was lack of authority
to its original execution," was misleading and erroneous.

APPEAL, from a judgment in favor of plaintiff, from
the First Judicial District Court, Santa Fe County.
Judgment reversed.

The facts are stated in the opinion of the court.

H. C. WALDO, C. H. GILDERSLEEVE, and GEO. C.
PRESTON for appellant.

CATRON, THORNTON & CLANCY and W. B. SLOAN
for appellee.

JOHN H. KNAEBEL of counsel.

O'BRIEN, C. J.—On the ninth day of August, 1879,
the plaintiff, August Kirchner, a resident of Santa Fe
county, in this territory, claims to have entered into a
written contract with the defendant, Saron N. Laughlin,
a resident of California, and one Joseph H. Wiley, of
the tenor following, to wit:

"These presents witness that, whereas, August
Kirchner agrees to intrust and deliver to Joseph H.
Wiley, of Santa Fe county, New Mexico, and Saron N.
Laughlin, of California, two thousand ewes, upon the
terms hereinafter stated, the said Joseph H. Wiley and
Saron N. Laughlin agree and undertake to receive and
hold and take care of the said ewes and to pay and

deliver to the said August Kirchner annually, for the use of the same, twenty-five good yearling wethers, to be delivered at such point in said county of Santa Fe as the said Kirchner shall designate, wethers to be one year old, and twenty-five fleeces of good, clean wool to, be delivered at such point on the railroad within the territory of New Mexico as said Kirchner shall designate, for each one hundred of said ewes; that is to say, five hundred wethers and five hundred fleeces of wool annually for the two thousand ewes. The said ewes to be from one to four years old, and to be delivered and received during the month of August, 1879, and this contract to continue and be in force for the term of five years from the date thereof, and at the end of said term of five years the said Joseph H. Wiley and Saron N. Laughlin are to and hereby undertake to deliver to said August Kirchner two thousand ewes of like ages, quality, and condition as those which shall be delivered to them: provided, that they may deduct therefrom any number of ewes which may be lost by inevitable accident or act of God. It is further agreed that said ewes shall be regarded as the property of said August Kirchner, and that if the said Wiley or the said Laughlin shall at any time attempt to remove the same from the territory, or to dispose of the same, without the consent of the said August Kirchner, the said August Kirchner may take possession of the same as his property, by replevin or otherwise, either the same ewes or others which may be substituted for them; the true intent and meaning hereof being that the said Wiley and Laughlin are at all times to keep and hold and have on hand two thousand ewes, to be held and regarded as the property of said August Kirchner. It is further agreed that said Joseph H. Wiley and Saron N. Laughlin shall pay all taxes which may be assessed upon said sheep, or to which the same may be liable, and shall answer for all trespasses committed

and damages caused by them.   In testimony whereof,
etc.                       JOSEPH H. WILEY.          [SEAL]
                          "SARON N. LAUGHLIN.       [SEAL]
"Witness:     M. A. BREEDEN.
     "By JOSEPH H. WILEY, his Agent.
     "It is hereby acknowledged that the sheep mentioned
in the foregoing agreement were received by the under-
signed as therein provided, and at the same time five
hundred ewes additional, of like quality, character, and
description, and upon the same terms and conditions
as above specified, and also twenty-three good, sound,
serviceable rams, which number of rams are to be
delivered with the sheep on the execution of said con-
tract.                       SARON N. LAUGHLIN.
                             "By J. H. WILEY.
                             "J. H. WILEY.
     "Santa Fe, Sept. 14, 1881."
     The relations existing between Laughlin and Wiley
at the time the foregoing contract was made are dis-
closed by the following written instrument:
     "This agreement, made this sixth day of December,
A. D. 1875, between S. N. Laughlin, of Castroville,
Monterey county, and state of California, party of
the first part, and J. H. Wiley, of Natividad, Monterey
county, and state of California, party of the second
part, witnesseth, that the party of the first part agrees
to lease to the party of the second part the surveyed
portion of the Eaton Grant, situated in Santa Fe county,
and territory of New Mexico, for a period of one year
from January 1, 1876, or to January 1, 1877, and to
allow said second party thirty dollars ($30.00) per
month for said one year; also, one tenth increase of
stock raised upon said grant, providing said first party
sees fit to place any stock upon it; also, one half of net
proceeds of hay, from said grant, and two thirds of all
grain, vegetables, or whatever else may be raised upon
said grant by said second party individually, and one

tenth of one third of whatever may be raised on shares by others. Also, to furnish said second party with one thousand dollars in money as he may require it for the purchase of horses or mules and farming implements. Said advance to draw one and one half per cent interest per month. Also, to furnish whatever seed may be required for planting, and furthermore to allow said second party to work as much of the irrigable land of said grant, for a second year, as he may choose, on same conditions as heretofore expressed, except that he shall not receive a salary from said first party. The party of the second part, for the consideration above mentioned, agrees to superintend the aforesaid grant, to take good care of the orchard and house and live stock placed upon said grant by said first party, and to use his exertions in endeavoring to promote the interests and welfare of said first party. He agrees to cultivate land himself, to let land on shares, and to take good care of the stock and implements purchased by himself, and not to remove or dispose of any of same until all advances made by said first party shall have been fully satisfied. He further agrees to cut and market the hay, and, after deducting the necessary expenses for so doing, to turn over to said first party, or his order, one half of the net proceeds, and to market at Santa Fe said first party's interest in all else raised upon said grant, being one third of what is raised by said second party, and three tenths of what is raised by others, and to turn over the proceeds to said first party or his order. Said second party also agrees to retain said Eaton Grant on same conditions as heretofore expressed in this agreement, for a period of three years, if said first party so elect. In witness whereof, etc.                S. N. LAUGHLIN.          [SEAL]
                 "J. H. WILEY."          [SEAL]

Wiley was in possession of the grant under the foregoing "lease" at the time of the execution of the

alleged contract between Kirchner, Laughlin, and him-
self.  The plaintiff in his declaration states that on
the ninth day of August, 1883, the alleged contract was,
by the mutual consent of the parties thereto, terminated,
and in full satisfaction and discharge of all obligations
assumed thereby the defendant agreed to deliver to the
plaintiff two thousand, five hundred ewes and twenty-
three rams, six hundred and twenty-five wethers,
and six hundred and twenty-five fleeces of wool; that
defendant, in violation of such verbal agreement, failed
and refused to deliver any more than one thousand, two
hundred ewes and twelve rams,—to plaintiff's damage
$3,000.  The defendant pleaded the general issue to
the declaration, and pleaded specially "that the said
supposed agreement in writing is not his deed, and he
denies his signature thereto; that he never executed
the said instrument, nor authorized any person to exe-
cute it for him."  Upon the issues so made the case
was tried to a jury, WHITEMAN, J., presiding, resulting
in a verdict in favor of plaintiff for $3,910.  The de-
fendant thereupon moved for a new trial on the fifteen
alleged grounds of error, which motion was overruled,
and judgment entered on the verdict.  The cause is
here for review on defendant's appeal from this judg-
ment.

It is not disputed that unless appellant, Laughlin,
executed, authorized, or subsequently ratified the exe-
cution of the alleged written contract, there
would be no consideration to sustain his
alleged verbal promise as to the delivery
of a certain number of sheep and a quantity of wool,
claimed to be made by him in 1883, in full satisfaction
of all his obligations under such contract.  The defend-
ant, in his special plea, expressly denied under oath
the execution of that instrument.  In the absence of
proof of such execution, by competent evidence, plain-

CONTRACT: suit
for breach: best
evidence.

tiff would not be entitled to recover. The contract does not purport to have been signed by the defendant personally. His signature thereto is the act of Wiley, as his agent. Hence, as this written agreement is the foundation of plaintiff's right of action, we must first determine whether Wiley's agency was properly established on the trial or not. No formal power of attorney had been given, and it is not pretended that the "lease" between Laughlin and Wiley, set out in the foregoing statement, authorized the latter to execute such contract in behalf of the lessor. The so-called original contract purports to have been made on August 9, 1879, and the supplement thereto on September 14, 1881. The trial took place on the twenty-sixth, twenty-seventh, and twenty-eighth days of August, 1890. Wiley at that time resided in California. His testimony on the question of his disputed agency, the letters or other written instruments presumably in his possession, or under his control, evidencing his right to attach appellant's name to the contract, would have been important, if not decisive, on the trial in the court below. Yet no effort appears to have been made to secure his attendance, to procure the written evidence of his alleged agency, or to take his deposition. It is true he was beyond the jurisdiction of the court, and was not amenable to its process or orders. Still, three letters addressed to him by appellant were found among the files in the cause. Why or how they were there, and why the fourth one, claimed by plaintiff to contain the evidence of his agency, was neither filed nor produced, does not appear in the record. This brings us to the consideration of the first error assigned by the defendant to secure a reversal of the judgment. In that assignment he claims that the district court erred in allowing a witness in behalf of the plaintiff to testify as to the contents of a letter, written by Laughlin, shown to him by Wiley on August 9, 1879, purporting to

authorize Wiley to execute the contract in his own behalf and that of the appellant. This was the only material testimony offered or received in support of Wiley's agency. Defendant objected to its admissibility on various grounds,—among others, that it was incompetent. Plaintiff now contends that the objection was too general to be available. We do not see any reason in the record why the objection should be more specific. Plaintiff contended that the agency in dispute was fully authorized by a certain letter claimed to have been written by Laughlin to Wiley. It had not been shown that the letter had been lost or destroyed; that any search or effort had been made to procure it. It was shown, it is true, that Wiley, to whom the letter had been addressed, and in whose possession it had been last seen by the witness, resided in California.

Notwithstanding the fact of nonresidence, we are clearly of the opinion that the objection was sufficiently specific to apprise the court that the letter itself was the best evidence of its contents, and that secondary evidence thereof could not be received on the mere showing of Wiley's nonresidence. Without the testimony of the witness Breeden as to the contents of this letter, there was no evidence to sustain the verdict. This testimony could not be received over the objection of the defendant without having previously shown some effort to procure it, or to account for its nonproduction. No such effort was shown. The authorities cited by appellee in support of his contention to the contrary do not sustain his position. The rules of evidence on this point may have fluctuated prior to the introduction of the statutory mode of taking the testimony of nonresident witnesses by deposition; but it is very clear that since the adoption of that system the rule has been invariable, as far as we can discover, that secondary evidence of the contents of a written instrument, constituting the foundation of the cause of action

or defense, is not admissible, in the absence of statutory sanction, merely because such instrument is in the possession of a party residing outside of the court's jurisdiction.

We have examined the authorities cited in the brief of the learned counsel of the appellee apparently in conflict with the foregoing views (Barton v. Driggs, 20 Wall. 134; Shepard v. Giddings, 22 Conn. 282; Brown v. Wool, 19 Mo. 475; Teall v. Van Wyck, 10 Barb. 376; Boone v. Van Dyke, 3 Mass. 352; Eaton v. Campbell, 7 Pick. 10; Bailey v. Johnson, 9 Cow. 115; Mauri v. Heffernan, 13 Johns. 58), but are unable to find in any of them the approval of a different rule. The appellee relies upon a contract in writing for his right to recover in this action. The defendant in his pleas denies that he ever made such contract. Not one of these cases goes so far as to hold that, if the evidence of the execution of the contract is to be found in a writing in the possession of a person residing beyond the jurisdiction of the court, the contents of such writing may be shown by parol, in the absence of proof that proper efforts had been made to produce it. The supreme court of the United States, notwithstanding the doctrine enunciated in Barton v. Driggs, 20 Wall. 134, apparently favoring the contention of appellee, has approved the rule. "If the paper," says that court in Turner v. Yates, 16 How. 14, "was in the hands of the consignees in London, secondary evidence was not admissible. If as parties, they were entitled to notice to produce the paper; if as third persons, their depositions should have been taken, or some proper attempt made to obtain it." In a well considered case recently decided by the supreme court of the state of Oregon (Wiseman v. N. P. R'y Co., 26 Pac. Rep. 272), it is held that "the fact that the person to whose possession the paper was traced resided out of the state did not excuse the defendant from a diligent effort to pro-

cure it.'' To the same point: Dickinson v. Breeden,
25 Ill. 186; McGregor v. Montgomery, 4 Pa. St. 237;
Whart. Ev., sec. 130; Wood v. Cullen, 13 Minn. (Gil.)
394; 5 Day (Conn.), 286. We consider this the only
safe rule, and any departure from it would only add to
the number of uncertainties incident to judicial inves-
tigations. Besides, it is supported by an almost unva-
rying current of decisions of the courts of the greatest
respectability. Had we any discretion in the matter,
we would feel constrained, in view of the peculiar cir-
cumstances of this case, to exercise it in the behalf of
the defendant. Without proof of the written contract,
—modified, it is true, but not entirely superseded, by
oral agreement, subsequent to its execution,—this ac-
tion can not be sustained. White v. Soto, 82 Cal. 654.
This contract purports to have been signed by Wiley
as the agent of the defendant. The right so to sign it
was expressly denied by the principal. Hence it was
necessary to prove on the trial the agent's express or
implied authority. The power to sign, plaintiff con-
tended, was to be found in a letter written in August,
1879, by the appellant to Wiley. At that time Wiley
showed the letter to the witness, Col. Breeden, then a
lawyer in full practice in the territory. The letter, it
appears, was then returned to Wiley, who at the time
of the trial, in 1890, resided in the state of California.
There was no effort made to procure the letter, to take
the deposition of Wiley, or even to request his attend-
ance at the trial. In the face of these facts, over the
objection of the defendant, Breeden is permitted to
prove the contents of the letter, forming the very basis
of plaintiff's cause of action. Eleven years had elapsed
since he had read the letter, and the result of the suit
is made dependent upon his version of its contents.
His memory may have been more felicitous than was
that of the ''Leader of the Ten Thousand.'' Still, we
do not feel at liberty to relax a rule, approved by every

consideration of public policy, to let in such evidence of the contents of an instrument that might have been produced, so far as the record shows, without great delay, expense, or inconvenience.

The second error assigned by appellant is based on the refusal of the trial court to allow the witness Breeden to be cross-examined as to the reasons, if any, given in certain letters written by defendant to witness, as to why he desired to have his name stricken from the contract. The witness was asked and answered as follows: "Direct examination: Question. Colonel, after the execution of this contract, did you have any communication with the defendant on the subject? Answer. I at once wrote what had been done. Q. Did he answer what you wrote? A. I am not able to remember, but I think there was no further correspondence on that subject for two years more. Then, after having come here, he wrote me several letters urging me to have his name taken off that contract, and have him relieved from any responsibility. That was several years after the transaction." "Cross-examination: Q. Did he state on what ground he wanted it taken off?" Plaintiff objected to this question as improper cross-examination, and the objection was sustained. We are clearly of the opinion that there was error in so ruling. The answer of the witness showed that the defendant then knew that his name had been signed to the contract. Why did he want it taken off? Either because he wished to relieve himself from liability thereunder, or because he had never signed nor authorized the signing thereof. Plainly, the jury were entitled to the information sought by the question, whether material or only collateral to the issue. The importance of this question is rendered more apparent by the record of the second trial of the action. The "agent" Wiley was then a witness, and Col. Breeden was not. The judgment was against the

*(margin note: CROSS-EXAMINATION: evidence.)*

defendant, and he appealed.   In the decision of that case (23 Pac. Rep. 175), the court say: "Wiley testified that Laughlin was never in any way interested in the contract, and never gave me at any time permission or authority to sign his name to the Kirchner sheep contract, or to enter into any contract for him with Mr. Kirchner in regard to sheep, and Mr. Laughlin never at any time or place ratified the contract with Kirchner sued on in this cause."

The foregoing views are sufficiently comprehensive to dispose of the first six assignments of error.

The seventh assignment has peculiar significance in the light of the fact that authority to bind the de- IMPEACHMENT of fendant by this contract is positively de- witness: evi- dence. nied by him on the present trial, and was as positively denied by him and Wiley on the former trial. Such authority is based solely upon the testimony of the witness Breeden.   On July 10, 1882, and on June 20, 1883, Breeden wrote to Laughlin two letters, wherein he in substance stated that his opinion as to Wiley's right to sign the sheep contract in Laughlin's name was based upon representations made to him by Wiley.   While Mr. Laughlin was on the witness stand, his counsel offered these two letters for the purpose of contradicting the testimony of Col. Breeden.   Plaintiff's counsel objected on the ground that they were inadmissible for the purpose, for the reason that the proper foundation had not been laid to warrant their reception under provisions of section 2084, Compiled Laws, 1884.   The objection was sustained.   The ruling was correct.   The section above cited provides: "But, if it is intended to contradict the witness by the writing, his attention must, before such contradictory proof can be given, be called to those parts of the writing which are to be used for the purpose of so contradicting him."   The rule would be the same in the absence of the statute, as declared by the English judges to the

house of lords in 1820, pending proceedings against Queen Caroline.   2 Brod. & B. 286–291.

There was also an exception taken to instruction number 10, given at request of plaintiff, assigned as appellant's ninth ground of error.   The instruction is as follows: "If you find from the evidence that the defendant, Laughlin, had knowledge of the said contract, and the delivery to Wiley of the sheep thereunder, and therefore acquiesced in such contract, and the conduct of Wiley thereunder, he ratified the same, and is bound thereby, even if there was lack of authority to its original execution." The instruction is misleading and erroneous.   Laughlin had testified that he knew of the existence of the sheep contract, but did not know that his name had been signed to it.   In justice to the defendant the court should have inserted after the word "contract" the following: "And knew the contents thereof, and knew that his name had been signed to it."

All other errors assigned are covered by the views hereinbefore expressed.   As this is the third time that this cause has been here for review on the appeal of the defendant, it is to be regretted that we can not allow the judgment to stand.   Admitting, as claimed in the able brief of the very learned counsel for appellee, that it is the interest of the public that there should be a speedy termination of lawsuits, there is another principle of public policy, of paramount importance that our duty prohibits us from ignoring, and that is that no one ought to be deprived of his property except in accordance with the law of the land.   The judgment below is reversed.

FREEMAN, McFIE, LEE, and SEEDS, JJ., concur.