## McCOLLUM v. SOUTHERN PAC. CO.

No. 1757. Decided January 25, 1907 (88 Pac. 663).

1. EVIDENCE — BEST AND SECONDARY — RAILROAD TICKETS.—Plaintiff, in an action against a railway company for injuries caused by its failure to provide him with proper accommodations and protection as a passenger, could introduce oral evidence to show the class of his ticket, where he had surrendered it to the railway and had served proper notice on the same to produce it.

2. SAME.—Revised Statutes 1898, section 3410, providing that there can be no evidence of the contents of a writing, other than the writing itself, except when the original is in the possession of the party against whom the evidence is offered and he fails to produce it after reasonable notice, contemplates a railway ticket as such writing.

3. SAME.—The rule that where the cause of action is founded upon an alleged writing, and both the execution and contents of the writing are denied, and the alleged writing is shown to be in the possession of a person residing outside the state, secondary evidence of its contents is not admissible unless proper effort is made to obtain the original, does not apply where the cause of action is not based upon a written contract, but is for tort.[1]

4. CARRIERS—TICKETS—NATURE AND EFFECT.—In the absence of evidence to the contrary, railroad tickets are not deemed to be contracts in writing, and no presumption arises, from the purchase of a ticket, that the ordinary duties of a carrier imposed by law are modified in the ticket.

5. SAME.—Where through tickets are in the form of coupons, each coupon is to be regarded as a distinct ticket for each road, sold by the first company as agents for the other companies.

6. SAME—PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—In an action for injuries to a passenger resulting from the failure to provide him proper accommodation and protection, evidence examined, and *held* insufficient to show, as a matter of law, that plaintiff was negligent.

APPEAL from District Court, Third District; T. D. Lewis, Judge.

Action by J. A. McCollum against the Southern Pacific Company. Judgment for plaintiff, and defendant appeals.

---

[1] Dwyer v. Salt Lake City Mfg. Co. (Utah), 47 Pac. 311.

Affirmed.

*P. L. Williams, Geo. H. Smith* and *J. G. Willis* for appellant.

*W. R. White* and *Powers & Marioneaux* for respondent.

FRICK, J.

Plaintiff (who will hereafter be styled "respondent") brought this action to recover damages against the defendant (hereafter called "appellant") for personal injuries alleged to have been sustained by respondent while a passenger on one of the passenger trains of appellant, arising out of the alleged negligence set forth in the complaint. In view that there is no question in this court respecting either the form or substance of the complaint, it need be set forth no further than to make clear the questions hereinafter discussed. The allegations deemed material for that purpose are; in substance: That respondent, on the 7th day of April, 1903, purchased from the St. Louis, Iron Mountain & Southern Railway Company a first-class passenger ticket, good for passage over said road and over other connecting lines, including that of appellant, through Missouri, Texas, Arizona, and California to San Francisco, and from thence over appellant's railroad to Ogden, Utah, and from thence back home to Fisk, Missouri, where the ticket was purchased. The respondent then sets forth the duties assumed by appellant as a carrier of passengers, which, being merely the duties imposed by law, may be treated as surplusage and need not be set forth here. The complaint then proceeds further: That on or about April 16, 1903, respondent boarded a regular passenger train of appellant at San Francisco, California, on his return home through California, Nevada, and Utah, to Ogden, Utah; that appellant placed respondent in a passenger car, No. 1558, which was a car used for second-class passengers; that respondent many times during the journey to Ogden, Utah, demanded of the conductor in charge of the train to be placed in a better car, which said conductor neg-

lected and refused to do; that in said car, during all of said trip from Reno to Ogden, there were several second-class male passengers who drank intoxicating liquors and became drunk, and continuously used obscene, boisterous, and profane, and threatening language and actions toward respondent and other first-class passengers during said journey; that said car was extremely filthy during all of said journey, and was cold and without heat or drinking water for the use of the passengers; that respondent and other first-class passengers notified, requested, and demanded of appellant's conductors and agents that they remove and quiet said second-class passengers; that they provide another better and first-class car for the respondent and other first-class passengers, and that they provide heat and water in said car, but all of said conductors who had charge of said car neglected and refused to comply with the repeated requests and demands of respondent to either remove or quiet said second-class passengers, or to provide a better car, with heat and water, for respondent and the other first-class passengers; that by reason of the coldness of said car, and the want of water, and of said filth, smoke, obscene and profane language, and threatening actions, respondent was unable to sleep or rest during the night, was made sick at the time and for some time thereafter, was frightened by the boisterous and threatening language and actions, and was humiliated and insulted by the great indignities received, owing to the conduct of said second-class passengers, and was shocked in his feelings and suffered great mental distress, to his damage, etc. Appellant answered, denying generally all the allegations of the complaint, except as to its corporate capacity, and that it owned and operated a railroad between San Francisco, California, and Ogden, Utah. Upon these issues a trial was had to a jury, at which respondent produced evidence which tended to sustain all of the allegations of his complaint. The appellant produced no evidence. The case being submitted to the jury upon instructions, they returned a verdict for respondent, upon which the court entered judgment, from which this appeal is taken.

Such of the testimony as will be necessary to illustrate the matters discussed in this opinion will hereafter be set forth. While appellant assigned numerous errors in the abstract, all were abandoned except two, which are stated in the brief of appellant, by its counsel, as follows: "The appellant relies, for reversal, upon the errors committed by the trial court in permitting plaintiff to testify to the contents of the written contract in question, and also upon the fact that plaintiff's testimony conclusively shows him to have voluntarily remained in the car under the conditions complained of, without effort on his part to have relieved himself therefrom, and by reason of his conduct he alone was responsible for any damage which may have resulted to him therefrom." We will consider the alleged errors in the order as above stated.

The first error is based upon the following proceeding occurring during the trial: The respondent had testified that he purchased a ticket at Fisk, Missouri, on the 7th day of April, 1903, and that he paid therefor the sum of $102; that he did not have the ticket in his possession; that the same was a coupon ticket, the several coupons of which had been taken up by the different conductors of the railroads traveled over by him; that he left San Francisco on or about April 14th, on his return home to Fisk, Missouri, and that for that purpose he boarded a train of appellant at Oakland, California; and that the conductors of appellant had taken up the portions of his ticket between San Francisco, California, and Ogden, Utah. Upon this testimony counsel for respondent stated in open court that a notice to produce the ticket had been served on appellant's counsel (which notice and service thereof appears in the record in this case), and asked them if they had produced the ticket, to which they responded that they had not, and after respondent further testified that the last portion of the ticket was taken up outside of the state of Utah, to wit, in the state of Missouri, counsel for respondent asked him the following question: "Q. State whether or not that was a first-class ticket." To this question counsel for appellant objected that "it is incompetent,

and, furthermore, the ticket is in writing." The court then stated that it appeared that the ticket, if in writing and was outside of the state of Utah, that a part thereof had been surrendered to appellant, and that notice to produce it had been served on it. To this counsel for appellant responded: "Our objection goes to the contract, however, not to any part they have surrendered to us. A demand was made on us for the entire ticket, including the part just testified to, which is shown not to have been in the possession of the defendant at any time." The objection was overruled, and the respondent answered: "Yes, sir; it was." So as to make our views clear, we will add here that, after answering the foregoing question, respondent further testified that at the time he boarded the train at Oakland, California, he was requested to show his ticket before entering the car; that he did so, and that he was directed by an official who seemed to be in charge to go into the car in question; that on several occasions during the journey between Reno, Nevada, and Ogden, Utah, covering a period of about twenty-four hours, he had called the attention of the conductors to the conduct of the objectionable passengers, and the filthy and cold condition of the car, to the lack of heat and water therein, and that he was not receiving the treatment that a first-class ticket entitled him to; and that the conductor finally told him that he (the conductor) could do no better in the way of accommodations for respondent. Respondent described the car as an ordinary day coach, with the usual plush seats. The question, therefore, is, did the court err in permitting the foregoing question to be answered, in view of the nature of the case and the state of the whole record?

Counsel rely upon section 3410, Revised Statutes, 1898, which, so far as material, reads as follows:

"There can be no evidence of the contents of a writing, other than the writing itself, except in the following cases: . . . When the original is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice."

Counsel contend that in this case the evidence had disclosed, at the time of the objection, that what they term the

"contract portion" of the ticket was not surrendered to appellant, but was surrendered to another carrier in the state of Missouri, and that for that reason the case does not come within the exception of the statute above quoted. Is this contention sound? We think not. Counsel's contention is, we think, too narrow, in view of the nature of the case and the character of passengers' tickets as evidence in such cases. In the first place, there was nothing in the evidence, when the objection was made, to disclose what the nature of the ticket was; there was nothing that apprised the court that it did or did not embody a special contract; nor is there anything in the pleadings to show this. As a matter of law railroad tickets, as a general rule, do not necessarily cover the duties arising out of the relation of carrier and passenger. Thompson, in his Commentaries on the Law of Negligence (volume 3, section 2581), speaking of the nature of railway passage tickets, says:

"An ordinary passage ticket is not a written contract, though it may be so drawn and signed as to become such, as where it embodies in explicit terms an undertaking which the carrier assumes toward the person named therein. Excluding tickets of this kind, it is to be observed that a passage ticket is a mere token or voucher furnished by the carrier to the passenger upon the payment by him of fare."

The nature of railway tickets, as shown by the authorities, is well and clearly crystallized in the following statement by Mr. Justice Wilkes of the Tennessee Supreme Court, in the case of *Watson v. Louisville & N. R. Co.*, reported in 56 S. W., at page 1026, and 49 L. R. A., where, at page 456, he says:

"It was held in that case [referring to another case] that a sale of a railroad ticket at the usual full fare, and not for a special occasion, entitled the purchaser to a full and unlimited right of passage, and that a mere printing of conditions upon the face or back of such ticket, attempting to limit this right, would not have that effect, and would not carry notice to the passenger of the condition and requirement, unless his attention was called to it, or it was shown to him and assented to by him. This holding was based upon the theory that when a passenger purchases a ticket for transportation from one point to another over the road of a public carrier, and pays full or regular

ordinary fare, the ticket is not intended as a contract in itself, but is a mere token, or the evidence of a contract which the law creates, and which lies behind the ticket. In such case the law makes the contract, and regulates the reciprocal rights and duties of both carrier and passengers, and the ticket is a mere token that such contract exists, and that under it the passenger is entitled to be carried to and from the points named, without regard to a time limit printed upon it. *The ticket itself, however, is not presumed to set out the terms of the contract, and the passenger is not required or expected to look to it for any stipulations or conditions different from what the law imposes.* This rule we consider to be beneficial alike to carrier and passenger, and well supported by the great weight of authority in this and other states." (Italics ours.)

In the case of *Logan v. Hannibal & St. J. Ry. Co.,* reported in 12 Am. & Eng. R. R. Cases, at page 142, Henry, J. quotes and adopts, from Thompson on Carriers of Passengers, the following:

"A ticket cannot be said to be either the contract, or contain the contract. The settled opinion is that it is a mere receipt taken or voucher adopted, for convenience, to show that the passenger has paid his fare from one place to another. A contract for transportation may, therefore, be proved independently of the terms of the ticket."

The case here quoted from illustrates that the principle now under consideration may operate for and against both carrier and passenger. The distinction between a passage ticket and a bill of lading, in their nature as contracts, is clearly pointed out by Dyer, J., in the case of *Mauritz v. N. Y. L. E. & W. R. Co.* (C. C.), 23 Fed. 765, and in the note to that case at page 774. The clear weight of authority is to this effect, and we will cite only a few of the many cases upon the subject, among which are the following: *Buffett v. Troy & B. R. R. Co.,* 40 N. Y. 171; *Rawson v. Penn. R. R. Co.* (N. Y.), 8 Am. Rep. 543, 545; *K. C., St. J. & C. B. Ry. Co. v. Rodebaugh* (Kan.), 5 Am. St. Rep. 715-718. In *Quimby v. Vanderbilt,* 17 N. Y. 306, 72 Am. Dec. 469, and in *Van Buskirk v. Roberts,* 31 N. Y. 661, it is held that passage tickets do not come within the rule of written contracts.

The rule as stated in the foregoing authorities must, we think, be considered to be sound upon both reason and principle. The ticket is issued and delivered to the passenger,

so that he may present it to the conductor as evidence entitling the holder to a seat and necessary accommodations on the train. As soon as the conductor is presented with this evidence, he usually takes it up, and the passenger has no further right to its possession. It, therefore, does not perform the usual functions of a written contract, in the usual and generally accepted meaning of that term. The duties arising from the relation of carrier and passenger are regulated by law, and, as is well said by Mr. Justice Wilkes in the Watson Case, supra, no presumption arises from the purchase of a ticket that the ordinary duties imposed by law are modified in the ticket. In the case at bar, therefore, when the objection was made, it appeared from both the complaint and the evidence that respondent was not suing for a breach of the contract, strictly speaking, but for a negligent failure of appellant in providing him with the care and protection to which the law entitled him. The evidence showed, at the time the objection was interposed, that the relation of carrier and passenger had existed and continued for more than twelve hours when the conditions arose of which respondent complains. His ticket had been inspected by both an official at the depot in Oakland, when he was admitted into the car, and by the conductor after he had been admitted into it, and had been surrendered to the conductor, who, for the purposes of this case, was appellant. If respondent had brought his action upon the ground that appellant refused to carry him on presentation of his ticket, then it might be that his right to be carried at that time, and on that particular train, would be evidenced by the ticket. In such a case the law may well be that there is no presumption that a mere ticket, without a further showing, would entitle the holder to ride on all trains run by the appellant, and, in order to recover for a breach of that character, the party complaining would have to prove the right to board that particular train in order to establish a breach. But in this case, as we have seen, the respondent complained only of the negligent failure of the appellant in not caring for and protecting him in the manner the law required. The objection, therefore,

did not, as we view it, fall within the principle contended for by counsel, nor within the authorities cited by them.

Assuming, but not deciding, that the ticket in this case was a contract, and that the action was based thereon, did the court err in overruling the objection, in view of the state of the evidence and the pleadings in this case? Our answer again must be in the negative. The evidence in this case is to the effect that the ticket purchased by respondent was what is designated as a "coupon ticket," and that the conductor on appellant's train had taken up the coupon or coupons good for passage between Oakland, California, and Ogden, Utah. It has repeatedly been held that when what are known as "through tickets," in the form of coupons, are sold, each coupon is to be regarded as a separate and distinct ticket. In the case of *Knight v. Portland S. & P. Ry. Co.,* 56 Me., at page 240, 96 Am. Dec. 449, the rule is stated in the following language:

"The through tickets in the form of coupons, . . . are to be regarded as distinct tickets for each road, sold by the first company as agents for the other companies. The rights and liabilities of the parties are the same as if the purchase had been made of the defendants at their station."

This text is amply sustained by the authorities. (4 Elliott, Railroads, section 1596, and authorities there cited.) We know of neither law nor reason to the contrary where, as in this case, nothing is involved except a failure to comply with the duties imposed by law. If the respondent had sought to hold appellant to special duties arising out of a special contract, it may well be that the contract imposing them should have been produced; but this would again be so because, without proving what the contract was, no breach thereof could be shown. If in this case, therefore, we assume the ticket in question to be a contract, under the law making each coupon a separate and distinct ticket, how can we escape the conclusion that the notice to produce it, served upon appellant, was not a compliance with the exception mentioned in section 3410, which admits secondary evidence of the

contents of writings after a failure to produce the original by the party in whose possession it is shown to be. The evidence was that respondent had surrendered the coupon to the appellant. It had a right to receive it, and the coupon was, it must be assumed, issued for that express purpose. Why, then, was a notice to produce the ticket, served upon the appellant, not all that is, and well can be, required under the law?

We do not overlook the fact that counsel claim that the notice upon them was to the effect that they produce the ticket, and by that they construe it to mean the whole ticket. But, since the law makes each coupon a distinct and separate ticket, the law would, no doubt, have absolved them if they had produced the coupon surrendered to their client. But they did not do this. Respondent, however, did not testify to the contents of the ticket, unless it may be said that designating it as a first-class ticket was doing so. We may assume, we think, that the coupon surrendered to appellant, if it apprised it of anything beyond the mere right to a passage by the respondent, certainly apprised it of the class to which the ticket belonged. This is all that respondent testified to. This is all that is contained in the objection. When notice was served upon it, therefore, to produce the ticket, it should have produced, at least, the ticket surrendered to it, or have made some showing exonerating it from doing so. The court had no right to presume that appellant could not produce that which was confessedly issued for its benefit, and which the evidence disclosed was surrendered into its possession. If appellant was in danger of being injured in any way by the testimony of the respondent in testifying that the ticket was a first-class ticket, it had it within its power, so far as the evidence disclosed, and as a presumption of law arising from its possession of the ticket, to prevent injury by producing the same. The rule of evidence permitting secondary evidence in such cases is based precisely upon this ground. If, upon the other hand, the ticket did not disclose the class to which it belonged, then the respondent did not,

and could not, in what he said, testify to the contents of a writing.

But we think, in the absence of any pleading or evidence to the contrary, that a passenger is entitled to reasonable care and protection, regardless of the class of his ticket. The want of this is what respondent complained of. It is true that he set forth in his complaint that he had purchased a first-class ticket; but this allegation was not necessary, and was alleged for the purpose merely of showing his right to become a passenger, or his relation to the appellant. After showing the relationship, he was entitled to all that the law granted, and in the absence of a special agreement to the contrary he could claim no more, and the appellant could grant him no less. If, therefore, there was an agreement whereby the respondent was entitled to less than the law gave him by reason of the relationship, the appellant should have pleaded such agreement; if, on the other hand, the respondent did claim more than this, he must assume the burden and plead and prove it. But to ask only that which the law gives, by reason of the relationship, cast upon him no such burden. (4 Elliott, Railroads, sections 1438, 1693, 1696.) Limiting this decision, therefore, to the facts in this case and the law applicable thereto, the court did not err in permitting the respondent to answer the question objected to.

This is made more apparent still from the testimony given by respondent in the case subsequent to the question objected to. He testified, without objection, and we cannot see upon what ground an objection could have been availing, that he several times, during the journey between Reno, Nevada, and Ogden, Utah, called the conductor's attention to the fact that respondent had a first-class ticket, and that he was not getting either the treatment or protection to which that entitled him. The appellant was thus, at the very time of the occurrence, apprised of respondent's claim to a first-class passage. So far as the evidence shows, the conductor, who for that purpose was the appellant, did not dispute this claim. In this view, therefore, there was, and could be, no

injury to appellant's rights. But, beyond all this, if we assume that the ticket in this case constituted a contract, a matter we do not decide, then the lower court could not rule otherwise than it did under the evidence as it stood when the objection was made, in view of the ruling of this court in the case of *Dwyer v. Salt Lake City Mfg. Co.*, 14 Utah 339, 47 Pac. 311. The case at bar falls, at least, within the law as the same is stated to be in that case.

Even if we should feel inclined to follow the rule contended for by counsel for appellant, which, in view of the ruling in the Dwyer Case, as at present advised, we are not, in respect to when secondary evidence may not be introduced of a writing, when such writing is in the possession of a person residing out of the state, still this case does not fall within the class of cases cited by counsel upon that question. The pith of the cases cited by them is well stated in the syllabus of the case of *Wiseman v. Southern Pac. Ry. Co.*, 20 Or. 425, 26 Pac. 272, 23 Am. St. Rep. 135, in the following language:

"Where the cause of action or defense is founded upon an alleged writing, and both the execution and contents of the writing are denied, and the alleged writing is shown to be in the possession of a person residing outside of the State, secondary evidence of its contents is not admissible, unless proper effort is made to obtain the original."

While there is much force in the argument of counsel why the foregoing rule should prevail, it cannot be given application unless the case wherein it is sought to enforce it falls within the rule. This case, as we have endeavored to show, does not do so for at least three reasons: (1) The case is not one where the cause of action is distinctly based upon a written contract, but is an action for tort. (2) Railroad tickets are not, as a general rule, deemed to be contracts in writing and there is nothing in the evidence in this case which takes it out of the general rule. (3) The coupon surrendered to appellant was a distinct and separate ticket for the purposes of this case, which was surrendered to appellant in this state, and notice was duly served upon it, giv-

ing it an opportunity to produce the same, and thus protect itself against secondary evidence.

No doubt we could have saved much time and labor in this case by simply declaring that the objection in this case was at least within the rule announced in the Dwyer Case, supra. But in view of the strenuous insistence of counsel that appellant was prejudiced by the court's ruling, and in further view of the fact that the question is of great importance to the traveling public and carriers of passengers alike, and the question respecting the nature of railroad tickets being squarely presented, we deemed it best to examine the question from the standpoint of both principle and authority, in the hope of avoiding, if possible, further contentions upon the subject-matter involved.

The second assignment needs no extended consideration. The principle of law that a person cannot recover for damages he could have prevented by a reasonable effort on his part, contended for by counsel, is well established, and should, in all proper cases, be enforced. But we can find no ground upon which to base the rule in this case, in view of the evidence. The respondent, as well as other passengers, at least several times during the journey, lasting nearly twenty-four hours, directed the conductor's attention to the obnoxious conditions surrounding them, and demanded relief. To appeal to the conductor for the purpose of obtaining relief from the prevailing conditions was, in effect, an appeal to the appellant. The conductor, however, informed respondent, and other passengers in his presence, that no relief could be obtained. Was it respondent's duty to seek where appellant's representative, employed for that purpose, could find none? But in any event this was a matter for the jury under all the facts and circumstances. We cannot say as a matter of law that it was respondent's duty to leave the train, especially in view that the evidence does not disclose that he might not have encountered other difficulties by doing so, and that he had the ready means at his command to obtain passage on another train, or that it was not necessary for him to continue his journey at that time. We think this

record does not present a case where we can say as a matter of law that the respondent should have acted differently in order to avoid further injury or damage. The whole matter was one for determination by the jury. The right to recover damages under the circumstances of this case is well settled by the authorities. (*Taylor v. Wabash R. R. Co.* [Mo.], 38 S. W. 304, 42 L. R. A. 110; Ray on Negligence of Imposed Duties of Carriers of Passengers, section 107, and the numerous cases there cited; 3 Thompson, Com. on the Law of Negligence, section 3083, 3087, 3185, 3186.)

The judgment is therefore affirmed, with costs.

McCARTY, C. J., and STRAUP, J., concur.